# STATE OF MICHIGAN

# COURT OF APPEALS

EPICUREAN DEVELOPMENTS, LLC, and THE
CLUB AT 4200, LLC,

UNPUBLISHED
February 28, 2017

Plaintiff-Appellants,

v

Nos. 329060, 334355
Jackson Circuit Court

SUMMIT TOWNSHIP,

LC Nos. 15-001519-CH,
15-003265-AA

Defendant-Appellee.

Before: HOEKSTRA, P.J., and SAAD and RIORDAN, JJ.

PER CURIAM.

In Docket No. 329060, plaintiffs Epicurean Developments, LLC, ("Epicurean") and The Club at 4200, LLC, ("The Club") appeal as of right the trial court order granting defendant Summit Township's motion for summary disposition, denying plaintiffs' motion requesting injunctive and mandamus relief, and dismissing plaintiffs' complaint without prejudice and without costs or attorney fees. In Docket No. 334355, plaintiffs appeal by leave granted the circuit court order affirming the Summit Township Zoning Board of Appeals' ("ZBA") decision, which found that plaintiffs' proposed land use did not qualify as a "club" under the Summit Township Zoning Ordinance ("STZO"), and rejecting the other claims that plaintiffs raised in their appeal of the ZBA's decision. On September 20, 2016, we granted plaintiffs' application for leave to appeal in Docket No. 334355 and consolidated the two appeals on our own motion in the same order.[1] We affirm in both appeals.

## I. FACTUAL BACKGROUND

In December 2014, plaintiff Epicurean purchased a vacant commercial building located at 4200 Spring Arbor Road, Summit Township, Michigan. Plaintiff The Club entered into a lease with Epicurean to rent the premises "for the purpose of operating a club" that would open when renovations to the property were completed.

---

[1] *Epicurean Developments LLC v Summit Township*, unpublished order of the Court of Appeals, entered September 20, 2016 (Docket Nos. 329060, 334355).

-1-

On January 22, 2015, plaintiff Epicurean filed an application for a building permit and plan examination, which was received by John Worden, the Summit Township Zoning Administrator. Epicurean described the proposed use of the building as a "Private Membership Club – Frame walls for mens/womens [sic] bathrooms. All walls framed to be interior non-load bearing." Similarly, Epicurean's description of the building construction stated, "Move and frame walls for restrooms etc. All walls to be interior-non load bearing walls."

The exact nature of plaintiff Epicurean's application and the approvals that were provided in response to the application is disputed by the parties and unclear from the documentation in the lower court record. Worden believed that the application was "approved as a remodel project on January 23, 2015." However, according to Kent Tyler, a member of both plaintiffs, Epicurean had "applied to the Township for a building permit for the Club's *use* of the Subject Property as a club" on January 22, 2015, and received "zoning approval for the proposed club" on January 23, 2015, prompting plaintiff Epicurean to "commence demolition" inside the building. However, the parties seem to agree that defendant informed plaintiff Epicurean, at some point in time, that the initial site plan submitted with its building permit and plan examination application was insufficient, and that an administrative site plan review with sealed architectural drawings was required.

In February 2015, plaintiff Epicurean submitted an application for site plan review and also submitted additional site plans. Under the section of the application requesting a "narrative description" of the "proposed use/request," plaintiff Epicurean stated, "Private Membership Club in which 50% of members will be shuttled to and from area hotels. Not requesting onsite parking." The next day, defendant issued a building permit to Epicurean approving renovation of the building "to use as 'private membership club' per building application." According to Tyler, upon receiving the building permit, Epicurean entered into construction contracts related to the property and immediately initiated construction.

In his affidavit, Worden stated that it later became apparent to defendant that plaintiffs did not intend for the property to be used solely as a "private membership club," and that plaintiff Epicurean had not disclosed the actual intended use of the property when it submitted the additional plans to defendant in February 2015. According to Worden, it was clear that the proposed use was not merely a "private membership club" based on plaintiffs' website, www.theclubat4200.com, which stated that the building at issue was currently being renovated in Jackson, Michigan, in order to become "a private members only club for couples" "who are interested in meeting others who want camaraderie," with amenities such as a sports bar, a dance club, and multiple seating areas. The club membership application on the website asked applicants to provide their IDs from the "swinglifestyle" website, which provides information, listings, dating services, and an online forum for "adult swingers."

In March 2015, defendant's attorneys sent a letter to plaintiff Epicurean's attorney, which stated, in part:

> The Zoning Administrator has requested our review and assistance regarding your letter dated March 13, 2015, as well as your clients' February 18, 2015 zoning application. Our review of those documents indicates that your clients alternatively describe their proposed uses of the Property as a "dance

club," a "private membership club," a "private membership club in which 50% of members will be shuttled to and from area hotels and not requiring onsite parking," and "business will have no employees, but rather will be directed by members of the private club."

The Property is located in the Township's C-2 District, General Commercial. In order for any uses to be lawfully located on the Property, they must be limited to the listed uses allowed in the C-2 District under Sec 150.145 of the Zoning Ordinance. That section lists a number of permitted and conditional uses in the C-2 District, but neither a "dance club" nor or a "private membership club" that principally serves "hotel guests" and has "no employees" are within any of the listed uses. Therefore, the Zoning Administrator may not grant your clients administrative approval of a site plan for these land uses.

* * *

As circumstances presently stand, your clients do not have any zoning approval to conduct any land uses on the Property. Your clients are not authorized to proceed with improvements to the Property that would be intended for any particular land uses, since at this time there is no approved land use. We strongly recommend that your clients obtain conditional use permit approval for any specific land uses on the Property before making any improvements.

Later in March, James R. Dunn, the Summit Township Supervisor, mailed a letter to Kent and Angela Tyler of plaintiff Epicurean, which stated, in relevant part:

This letter is to notify you of action being taken by Summit Township, subsequent to correspondence delivered to your legal counsel, Michael K. Falahee of White, Hotchkiss & Falahee, PLLC regarding your building and property at 4200 Spring Arbor Road, Jackson, Ml (copy attached).

Please be advised that your Summit Township Zoning Application for an "administrative site plan" review for 4200 Spring Arbor Road is being rescinded and returned to you with a refund of your application fee herewith. Consequently, any Building, Mechanical, Electrical and/or Plumbing Permits previously issued for renovations at this address are hereby suspended and all such work is to cease immediately.

Further, per the correspondence to your legal counsel, referred to above, you will need to apply for and receive a conditional use permit before making any improvements to this property.

On the same day, a stop-work order, signed by Worden, was delivered to plaintiffs' property based on a violation of §150.145 of the STZO.

In June 2015, plaintiffs filed a complaint in the Jackson Circuit Court, which raised a variety of claims challenging defendant's issuance of the stop-work order. Ultimately, defendant filed a motion for summary disposition under MCR 2.116(C)(4), (C)(8), and (C)(10), arguing,

-3-

*inter alia*, that dismissal of plaintiffs' complaint was proper because they had failed to exhaust available administrative remedies, including, among other things, appealing defendant's issuance of the stop work order to the Summit Township ZBA. Plaintiffs disagreed and contested defendant's motion for summary disposition on numerous grounds, arguing that they were not required to initiate any proceedings before the ZBA under the circumstances of this case.

The trial court agreed with defendant, granting defendant's motion solely based on its conclusion that plaintiffs were required to appeal any administrative zoning decision to the ZBA before filing a lawsuit in circuit court, such that plaintiffs' claims were not ripe for adjudication due to their failure to exhaust their administrative remedies. Accordingly, the trial court dismissed plaintiffs' complaint without prejudice. During its ruling on the record, the trial court commented that it was likely that the parties would appear before the court again in the future, but it reiterated its belief that it was necessary for plaintiffs to exhaust their administrative remedies before they asked the circuit court to intervene.

In September 2015, plaintiffs filed a claim of appeal in this Court, commencing the appeal in Docket No. 329060. Notably, plaintiffs raised several arguments contesting the trial court's conclusion that plaintiffs were required to exhaust their administrative remedies before pursuing the case in circuit court.

Then, later the same month, plaintiffs filed an application with the Summit Township ZBA, which, in effect, constituted an appeal of defendant's interpretation of the zoning ordinance finding that plaintiffs' proposed use was not permitted in the C-2 zoning district and defendant's related issuance of the stop-work order. In short, plaintiffs contended that their proposed use, a "private membership club," qualified under the "clubs and lodges" category of permitted uses in C-2 zoning districts pursuant to § 150.145 of the STZO. After reviewing documentation submitted by the parties and holding a public hearing, during which the parties presented extensive arguments and additional materials, the ZBA concluded, by a 6-1 vote, that plaintiffs' proposed use was not permitted under the "clubs and lodges" designation.

In December 2015, plaintiffs appealed the ZBA's decision to the Jackson Circuit Court, contesting the ZBA's decision on essentially the same grounds raised in their appeal in this Court in Docket No. 334355. After holding a hearing, the circuit court entered an order affirming the ZBA's decision.

## II. GENERAL STANDARDS OF REVIEW

MCL 125.3606(1) sets forth the standard for a circuit court's review of a ZBA decision:

The circuit court shall review the record and decision to ensure that the decision meets all of the following requirements:

(a) Complies with the constitution and laws of the state.

(b) Is based upon proper procedure.

(c) Is supported by competent, material, and substantial evidence on the record.

-4-

(d) Represents the reasonable exercise of discretion granted by law to the zoning board of appeals.

On appeal, we review the circuit court's decision de novo, " 'while giving great deference to the [circuit] court and zoning board's findings.' " *Edw C Levy Co v Marine City Zoning Bd of Appeals*, 293 Mich App 333, 340; 810 NW2d 621 (2011) (alteration in original), quoting *Norman Corp v City of East Tawas*, 263 Mich App 194, 198; 687 NW2d 861 (2004). Stated differently:

> This Court reviews the circuit court's determination regarding ZBA findings to determine "whether the lower court applied correct legal principles and whether it misapprehended or grossly misapplied the substantial evidence test to the [ZBA]'s factual findings." *Boyd v Civil Service Comm*, 220 Mich App 226, 234; 559 NW2d 342 (1996). This standard regarding the substantial evidence test is the same as the familiar "clearly erroneous" standard. *Id*. A finding is clearly erroneous if the reviewing court, on the whole record, is left with the definite and firm conviction that a mistake has been made. *Id.* at 234-235. [*Hughes v Almena Twp,* 284 Mich App 50, 60; 771 NW2d 453 (2009) (footnote omitted).]

### III. DOCKET NO. 334355

### A. PROPER INTERPRETATION OF "CLUBS AND LODGES"

Plaintiffs first contend that the ZBA incorrectly interpreted "clubs and lodges" under § 150.145 of the STZO, erroneously concluding that plaintiffs' proposed use was not permitted under that category, and that the circuit court erred in affirming the ZBA's interpretation. Plaintiffs also argue that the circuit court erred when it failed to find that the ZBA improperly considered "extrinsic evidence" when it interpreted "clubs and lodges." We disagree.

### 1. STANDARD OF REVIEW AND APPLICABLE LAW

In *Great Lakes Soc v Georgetown Charter Twp*, 281 Mich App 396, 407-408; 761 NW2d 371 (2008), we succinctly summarized the standard of review and guiding legal principles that are applicable to the interpretation of the STZO in this case:

> Ordinances are treated as statutes for the purposes of interpretation and review. *Soupal v Shady View, Inc*, 469 Mich 458, 462; 672 NW2d 171 (2003). Hence, the interpretation and application of a municipal ordinance presents a question of law, which this Court reviews de novo. *City of Riverview v Sibley Limestone*, 270 Mich App 627, 630; 716 NW2d 615 (2006). The goal of statutory construction, and thus of construction and interpretation of an ordinance, is to discern and give effect to the intent of the legislative body. *Neal v Wilkes*, 470 Mich 661, 665; 685 NW2d 648 (2004). Terms used in an ordinance must be given their plain and ordinary meanings, and it is appropriate to consult a dictionary for definitions. See *Halloran v Bhan*, 470 Mich 572, 578; 683 NW2d 129 (2004).

-5-

Generally, courts review a decision of a zoning board to determine whether it complies with the constitution and the laws of the state, is based on proper procedure, is supported by competent, material, and substantial evidence on the record, and represents the reasonable exercise of the board's discretion. MCL 125.3606. The determination of " 'the facts which, taken together, can be said to describe the situation' " presented by [plaintiffs'] practices and building proposal is a factual matter, and the ZBA decisions in that regard are entitled to deference. *Macenas v Village of Michiana*, 433 Mich 380, 395-396; 446 NW2d 102 (1989) (citation omitted). However, the manner in which the zoning ordinance applies to those facts, i.e., whether the proposed building is a ["club"] for purposes of the ordinance, is a question of law, for this Court to decide as a matter of review de novo. *Id.* at 396.

It is important to keep in mind the following principles of statutory construction:

When faced with questions of statutory interpretation, our obligation is to discern and give effect to the Legislature's intent as expressed in the words of the statute. We give the words of a statute their plain and ordinary meaning, looking outside the statute to ascertain the Legislature's intent only if the statutory language is ambiguous. [*In re Petition of Attorney Gen for Investigative Subpoenas*, 282 Mich App 585, 591; 766 NW2d 675 (2009) (quotation marks and citation omitted).]

Additionally,

[a]s far as possible, effect should be given to every phrase, clause, and word in the statute. The statutory language must be read and understood in its grammatical context, unless it is clear that something different was intended. Finally, in defining particular words in statutes, we must consider both the plain meaning of the critical word or phrase as well as its placement and purpose in the statutory scheme. [*Herman v Berrien Co*, 481 Mich 352, 366; 750 NW2d 570 (2008) (quotation marks and citations omitted; alteration in original).]

Similarly, the STZO provides that any term not defined in the zoning ordinance "shall have the meaning of common or standard use." Summit Township Ordinances, § 150.006. A use is "common" if it is the "widespread," "general," or "popular" use. *Merriam-Webster's Collegiate Dictionary* (11th ed). Likewise, a use constitutes a "standard" use if it is "regularly and widely used," "well-established and very familiar," or "substantially uniform and well established by usage in the speech and writing of the educated and widely recognized as acceptable." *Id*.

"If the plain and ordinary meaning of the language is clear, judicial construction is normally neither necessary nor permitted." *Norman Corp*, 263 Mich App at 206-207. See also *Alvan Motor Freight, Inc v Dep't of Treasury*, 281 Mich App 35, 39; 761 NW2d 269 (2008). But if the meaning of the language is nebulous or ambiguous, judicial construction may be necessary to resolve the ambiguity. *Risko v Grand Haven Charter Twp Zoning Bd of Appeals*, 284 Mich App 453, 461; 773 NW2d 730 (2009). "A provision in a statute is ambiguous only if it

irreconcilably conflicts with another provision, or when it is equally susceptible to more than a single meaning." *Alvan Motor Freight*, 281 Mich App at 39-40. "[I]n cases of ambiguity in a municipal zoning ordinance, where a construction has been applied over an extended period by the officer or agency charged with its administration, that construction should be accorded great weight in determining the meaning of the ordinance." *Macenas*, 433 Mich at 398. See also *Sinelli v Birmingham Bd of Zoning Appeals*, 160 Mich App 649, 652; 408 NW2d 412 (1987).

> The court is not free to substitute its judgment by imposing what it considers to be the wisest version of the ordinance, but is confined to an analysis of the text of the ordinance and, in the face of ambiguity, a determination of what the legislative body that enacted the ordinance intended by the language in question. [*Macenas*, 433 Mich at 396-397.]

## 2. ANALYSIS

As an initial matter, it is important to establish the nature of the request that plaintiffs submitted to the ZBA. On the face of the application, plaintiffs requested "Zoning Ordinance Interpretation." However, under the section requesting a "narrative description of proposed use/request," plaintiffs directed the ZBA's attention to an attached explanation, in which plaintiffs detailed the applications that it had filed with defendant, defendant's issuance of a building permit, and the events before and after John Worden, the Township Zoning Administrator, issued the stop-work order. Plaintiffs specifically contended that "[t]he Township Zoning [Administrator's] issuance of a stop[-]work order for the above property on March 26, 2015, alleging that the proposed use of a 'club' is not a permitted use under the Township's zoning ordinance is legally incorrect." Plaintiffs also expressly "request[ed] an interpretation of the zoning ordinance permitting [plaintiffs'] use." After explaining in detail their arguments regarding why the stop-work order was improper, plaintiffs concluded the attached explanation with the following statement:

> For the foregoing reasons, a person purchasing property in the Township could not be reasonably notified that the definition of "Clubs and Lodges" was so limited. . . . *The interpretation of "club" in section 150.145, where the term is not explicitly limited, by the Township is unreasonable, and is without basis in either the ordinance or Michigan law.* [Emphasis added.]

Accordingly, although plaintiffs specifically requested interpretation of the zoning ordinance, it is clear that they were, in effect, also seeking review of the Township Zoning Administrator's issuance of the stop-work order. Therefore, plaintiffs' application constituted a request for interpretation in the context of an appeal of defendant's previous interpretation of the zoning ordinance and issuance of the stop-work order.[2] As such, plaintiffs mischaracterize the

---

[2] See Summit Township Ordinances, § 150.366 ("The Zoning Board of Appeals shall hear and decide appeals where it is alleged by the applicant there is an error in any order, requirement, permit, decision, or refusal made by the Zoning Administrator or any other administrative official in carrying out or enforcing any provisions of this chapter including interpretations of the

record when they claim in their brief on appeal that they "sought an interpretation of the STZO independent of any factual issues," as they clearly sought a determination of whether their proposed land use was permitted under the ordinance and whether the stop-work order was improper.

We also reject plaintiffs' claim that the ZBA improperly considered evidence apart from the text of the STZO and that the circuit court applied an incorrect standard of review. The consideration of documentary evidence related to the question before the ZBA is expressly contemplated under the STZO, which provides that "[t]he Zoning Administrator *shall* transmit to the Board of Appeals copies of all papers constituting the record upon which the action appealed was taken 7 days prior to the Next Zoning Board of Appeals meeting." Summit Township Ordinances, § 150.369(A)(8) (emphasis added). Further, given plaintiffs' opaque label describing the proposed use, the ZBA necessarily needed to consider the evidence proffered by the parties in order to ascertain the actual use intended by plaintiffs and make a determination regarding whether that use was permitted under the STZO. Plaintiffs never provided a straightforward description of their proposed use, and their oft-repeated description ("a private membership club") offers little insight regarding the actual activities for which the site would be used. Notably, plaintiffs presented email correspondence at the ZBA hearing to show that their proposed use was desired or unopposed by the community, undermining their claim that the ZBA should not have considered any evidence outside of the zoning ordinance in rendering its decision. Therefore, to the extent that plaintiffs contend that the ZBA improperly considered extrinsic evidence regarding the nature of their proposed use, and that the trial court improperly considered the ZBA's factual findings in reviewing the ZBA's decision, these claims have no merit. See also Fisher et al., *Michigan Zoning, Planning, and Land Use* (ICLE, January 2016 Update), pp 257, 259 (explaining the common practice, and importance, of submitting all evidence in support of a request to the ZBA prior to the hearing, and recommending that a party preparing for a ZBA hearing request copies of reports or other materials prepared by township agencies, if they are not automatically provided, "so that it is fully appraised of any facts or recommendations that will need to be addressed at the hearing").

Likewise, the circuit court was required to review the ZBA's factual findings in light of the evidence in the record, see *Great Lakes Soc*, 281 Mich App at 407-408, and the circuit court and this Court are required to give deference to the ZBA's findings of fact, *Edw C Levy Co*, 293 Mich App at 341, including "[t]he determination of the facts which, taken together, can be said to describe the situation presented by [plaintiffs'] practices and building proposal," *Great Lakes Soc*, 281 Mich App at 407-408, quoting *Macenas*, 433 Mich at 395-396. The circuit court applied the proper standard of review, and we must give deference to the ZBA's determination of the particular land use proposed by plaintiffs, which it characterized as a "swinger's club."[3]

---

Zoning Map."), § 150.369(A)(1)-(3) (explaining how appeals to the ZBA are taken); MCL 125.3603(1) (delineating the general powers and duties of a ZBA under state law); MCL 125.3604 (discussing appeals to a ZBA).

[3] It is noteworthy that one of the emails proffered by plaintiffs at the ZBA hearing acknowledged that the proposed use was a "swingers club," as the email described the proposed club as a "private dance hall and social club" that would cater to "swingers." Accordingly, when

-8-

Next, contrary to plaintiffs' claim, it appears that several definitions may apply to the term "club" when it is used to denote a land use in a zoning ordinance. *Merriam-Webster's Collegiate Dictionary* (11th ed) defines "club," in relevant part, as "an association of persons for some common object usu. jointly supported and meeting periodically; *also* : a group identified by some common characteristic," "the meeting place of a club," "an association of persons participating in a plan by which they agree to make regular payments or purchases in order to secure some advantage," "an athletic association or a team," and, as a synonymous cross reference, a "nightclub."[4] In the dictionary, "a synonymous cross-reference indicates that a definition at the entry cross-referenced to can be substituted as a definition for the entry or the sense or subsense in which the cross-reference appears." *Merriam-Webster's Collegiate Dictionary* (11th ed), p 24a. "Nightclub" is defined as "a place of entertainment open at night usu. serving food and liquor and providing music and space for dancing and often having a floor show." *Id.*

In considering these definitions, it is clear that various—and distinct—land uses may be represented through the use of the term "club" in a zoning ordinance. As a result, we agree with the circuit court that the term "clubs" was ambiguous, as its meaning is nebulous or equally susceptible to multiple meanings. See *Alvan Motor Freight, Inc*, 281 Mich App at 39-40 (explaining when a statutory provision is ambiguous). Accordingly, it was necessary for the ZBA to interpret the meaning of "club" in the context of the STZO. See *Risko*, 284 Mich App at 461 ("Because this analysis remains somewhat nebulous, we find that judicial construction of the phrase . . . is necessary to resolve the ambiguity), citing *People v Denio*, 454 Mich 691, 699; 564 NW2d 13 (1997); *Norman Corp*, 263 Mich App at 206-207 (stating that if the ordinance language clearly indicates a particular outcome or meaning, "interpretation by the ZBA [is] . . . neither necessary nor permitted.").

Other provisions in the STZO shed light on the intended meaning of "clubs." See *Michigan Properties, LLC v Meridian Twp*, 491 Mich 518, 528; 817 NW2d 548 (2012) ("When considering the correct interpretation, the statute must be read as a whole. Individual words and phrases, while important, should be read in the context of the entire legislative scheme.") considering all of the evidence in the ZBA record, it is clear that plaintiffs are incorrect in claiming that the ZBA's characterization of their proposed use has no basis in the record.

[4] Other dictionaries provide similar definitions of "club." *Webster's New World College Dictionary* (5th ed) defines "club" as "a group of people associated for a common purpose or mutual advantage, usually in an organization that meets regularly: see also book club," or "the room, building, or facilities used by such a group"; "an organization that owns, controls, or sponsors and athletic team," or "the team playing for or representing such an organization"; and "a nightclub." *The American Heritage Dictionary* (5th ed) defines club as "[a] group of people organized for a common purpose, especially a group that meets regularly: *a garden club*," "[t]he building, room, or other facility used for the meetings of an organized group," and "[a] night club." The *New Oxford American Dictionary* (3rd ed) defines "club" as "an association or organization dedicated to a particular interest or activity," "the building or facilities used by such an association," "an organization or facility offering members social amenities, meals, and temporary residence," "a nightclub," and "an organization constituted to play games in a particular sport."

-9-

(citations omitted). We agree with defendant and the circuit court that "clubs" and "lodges" must be construed together based on the way in which permitted and conditional land uses are presented in § 150.145 of the STZO. In reviewing that section as a whole, it is apparent that the table delineates permitted and conditional land uses by category, grouping similar uses together in the same row. Consider, for example, the following groupings of similar uses in § 150.145: "[a]dult day care or child care centers," "[a]nimal parks, zoos, and aquariums," "[b]anquet hall[s], reception hall[s], and convention center[s]," "[b]anks and credit unions," "churches and other buildings for religious worship," "[h]otels and motels," "[o]ffices of an executive, administrative, professional, or similar nature," and "[p]ublic swimming pools, recreation centers, parks, playgrounds, and play fields." Summit Township Ordinances, § 150.145. Accordingly, because "clubs and lodges" are grouped together, it is reasonable to conclude that a definition of "club" similar in nature to the definition of "lodge" applies for purposes of § 150.145.[5] Likewise, as the circuit court noted, reading the ordinance as a whole reveals that the only reasonable interpretation "is to read the term 'clubs and lodges' as not including every conceivable kind of club."[6]

Definitions of "lodge" that constitute potential land uses include "a house set apart for residence in a particular season (such as the hunting season)," "a resort hotel : inn," "a house on an estate originally for the use of a gamekeeper, caretaker, or porter," "a shelter for an employee (such as a gatekeeper)," and "the meeting place of a branch of an organization and especially a fraternal organization <a Masonic lodge>," or "the body of members of such a branch." *Merriam-Webster's Collegiate Dictionary* (11th ed). Thus, when considered in light of the definitions of "clubs" previously mentioned, the definitions of "lodge" similar in nature to viable definitions of "club" include the meeting place of an organization, or the branch of an organization. Likewise, similar definitions of "club" include the meeting place of an association or group coming together for, or identified by, a particular characteristic, purpose, or plan. See *id*.

---

[5] For all of these reasons, we reject plaintiffs' claim that reading the ordinance in such a way renders either "clubs" or "lodges" surplusage, or that such a reading means that "clubs" would have the *same* meaning as "lodges." Contrary to plaintiffs' claims, both the grammatical context of the ordinance as well as the framework of the ordinance as whole shows that "clubs and lodges" was intended to denote a category of similar land uses, but not necessarily identical uses.

[6] This conclusion is supported by the fact that "adult physical culture establishments" are designated as a land use separate from "clubs and lodges" under § 150.145(5), and the "adult physical culture establishments" category encompasses "clubs" that fulfill the definition of "adult physical culture establishment." See Summit Township Ordinances, § 150.006 (defining "adult physical culture establishment" as "[a]ny establishment, *club*, or business by whatever name designated, which offers or advertises or is equipped or arranged so as to provide as part of its services massages, body rubs, alcohol rubs, physical stimulation, baths, or other similar treatment by any person.") (emphasis added). Likewise, "country clubs" are classified as a separate land use and are only permitted as conditional uses in RNF-1, RS-1, and RS-2 zoning districts. See § 150.145(45).

-10-

Moreover, in considering the similar definitions of "club" and "lodge," it appears that a "night club" is not the type of "club" intended by § 150.145(38), given the fact that eating and drinking establishments, as well as establishments offering nightly entertainment, are included under separate zoning categories. See, e.g., § 150.145(34), (61)-(63).[7]

Additionally, as previously mentioned, determining the legislative purpose or intent of a statutory provision requires consideration of the provision's context. *Herman*, 481 Mich at 36. "This critical word *context* embraces not just textual purpose but also (1) a word's historical associations acquired from recurrent patterns of past usage, and (2) a word's immediate syntactic setting—that is, the words that surround it in a specific utterance." Scalia & Garner, *Reading Law: The Interpretation of Legal Texts* (St. Paul: Thomson/West, 2012), p 33. See also *Arrowhead Dev Co v Livingston Co Rd Comm'n*, 413 Mich 505, 516; 322 NW2d 702 (1982) (explaining that sections of a statute "must be read in context with the entire act, and the words and phrases used there must be assigned such meanings as are in harmony with the whole of the statute, *construed in the light of history and common sense*.") (emphasis added). Moreover, because the meaning of "club" is ambiguous in the context of the STZO, it is permissible to look outside the ordinance to ascertain the drafter's intent. See *In re Petition of Attorney Gen for Investigative Subpoenas*, 282 Mich App at 591. Accordingly, the ZBA properly considered the use of "clubs" and "lodges" in previous versions of the zoning ordinance in ascertaining the meaning of "clubs and lodges" under the current version of the STZO.

Significantly, the historical, and recurring, use of "clubs" and "lodges" in prior versions of the STZO supports the ZBA's interpretation and application of the phrase "clubs and lodges" for purposes of § 150.145(38). The version of the STZO enacted on July 10, 1956, listed the following as a category of uses permitted in R-1 One Family Residential Districts: "Community buildings, country clubs, fraternal lodges, or similar civic or social clubs (but not a residential club, or a club operated as a commercial enterprise), after approval granted by the Board of Appeals." Zoning Ordinance for Summit Township, § 4.01(j), as adopted July 10, 1956. The version in effect in 1967 similarly provided that "[c]ommunity buildings, fraternal lodges and similar civic and social clubs (but not a residential club or a club operated as a commercial enterprise)" were permitted in R-1 and R-2 zoning districts following approval and authorization by the ZBA. Zoning Ordinance for Summit Township, §§ 4.02(k), 5.02(d), as amended November 14, 1961. Additionally, "[c]ommunity buildings, fraternal lodges, and similar civic and social clubs (but not a residential club or a club operated as a commercial enterprise)" were permitted in R-3 Districts even without approval or authorization from the ZBA. *Id*. at § 5.05(d). Lastly, the version of the STZO enacted in August 1971, which was prepared by both the Summit Township Planning Commission as well as the Jackson Metropolitan Area Regional

---

[7] The only time that the phrase "night clubs" is referenced in the zoning ordinance is in the table prescribing the parking space requirements for specific land uses, where it appears with "Restaurants, Beer Parlors, [and] Taverns." See § 150.222. Accordingly, it seems reasonable to assume that the drafters of the ordinance intended for "night clubs" to fall under a category other than "clubs and lodges" for purposes of § 150.145.

Planning Commission,[8] provided that "[c]lubs and lodges" were permitted in C-2 General Commercial Districts, the classification at issue in the instant case. Zoning Ordinance for the Township of Summit, § 4.4.2, as amended August 1971. None of these categories encompassed, as a conditional use or permitted use, a nightclub-like establishment as a "club" when that term was used within the same category as "lodges." Rather, the term appeared to consistently denote civic or social clubs.

In light of the foregoing, the ZBA did not err in concluding, and the circuit court properly affirmed the ZBA's conclusion, that plaintiffs' proposed land use is not consistent with the "clubs and lodges" permitted in C-2 zoning districts. As the ZBA noted, plaintiffs' proposed use included, among several other things, a "dance club." This factual finding is supported by documentary evidence from the initial circuit court case (LC No. 15-001519-CH), which was made part of the ZBA record, including Kent Tyler's affidavit (proffered by plaintiffs), the printouts of plaintiffs' website advertising the anticipated club, and plaintiffs' submitted site plans (both proffered by defendants). A review of this evidence confirms that plaintiffs' proposed land use constituted much more than "a private membership club," or a meeting or gathering place for an organization or group united by a common purpose or interest. Rather, it constituted, in effect, a "nightclub" with various amenities.[9] See *Merriam-Webster's Collegiate Dictionary* (11th ed) (defining "nightclub"). See *Johnston v City of Livonia*, 177 Mich App 200, 208; 441 NW2d 41 (1989) (noting that, in general, this Court is not bound by the labels that a party assigns to his or her position because doing so would elevate form over substance).

---

[8] Given the involvement of the Jackson Metropolitan Area Regional Planning Commission, it was not unreasonable for the ZBA, in ascertaining the "common" and "standard" meaning of "club" under the STZO, to consider ordinances enacted by other townships with the involvement of that commission. See Summit Township Ordinances, § 150.006; *Merriam-Webster's Collegiate Dictionary* (11th ed). Nevertheless, even if consideration of the other ordinances was improper, this error was harmless given the fact that the ZBA reached a proper conclusion regardless of this evidence. Cf. MCR 2.613(A).

[9] It is noteworthy that plaintiffs' website specifically advertised the upcoming venue as a "New York style dance club which features state of the art club sound and active lighting system [sic] to tantalize the senses. Whether it's a 70's disco tune or the most current in club dance music[,] our professional DJ's are there to provide you with the motivation to get out there and leave it on the dance floor. With high ceilings and a modern atmosphere it doesn't matter what age you are, this dance club will leave you breathless." Additionally, the website stated that the "club" would offer other social spaces, including a "sports bar" and seating areas for meeting and socializing with other members.

Despite the establishment's clear similarities to a "nightclub," as that term is commonly used, plaintiffs were not forthcoming with their proposed use, failing to check the "night club" box under the list of nonresidential uses outlined on the application that they submitted for a building permit. Instead, they checked "other" and vaguely described their proposed use as a "private membership club."

Additionally, although the ZBA repeatedly referred to plaintiffs' proposed use as a "swingers club" in its opinion, it is clear, as the circuit court recognized, that the ZBA's decision was not dependent on the fact that the prospective patrons of this establishment were "swingers," or that the anticipated members would patronize the club and participate in club activities in order to meet other adherents of the "swinger's lifestyle."[10] To the contrary, it is clear, simply based on the anticipated spaces inside the building and the projected activities and amenities, that plaintiffs' proposed use did not constitute a "club" as the term is used under § 150.145 of the STZO, regardless of the sexual preferences of the patrons.

Moreover, even if we assume, without deciding, that the ZBA erred when it considered the prospective alcohol use at the establishment in determining whether plaintiffs' proposed use constituted a "club or lodge," this consideration does not establish a basis for reversal because the ZBA's determination was proper for the reasons previously discussed. Cf. MCR 2.613(A) (defining harmless error); *Kopietz v Zoning Bd of Appeals for City of Village of Clarkston*, 211 Mich App 666, 672-673; 535 NW2d 910 (1995) (considering a case in which the ZBA considered factors irrelevant to the pertinent inquiry under the zoning ordinance at issue).

Plaintiffs have failed to establish that the ZBA and the circuit court erred in concluding that the substance of plaintiffs' proposed use, regardless of its label, was not a permitted use in the C-2 zoning district.

## B. CONSTITUTIONAL CLAIMS

Next, plaintiffs contend that the circuit court erred when it failed to find that the ZBA's decision violated their procedural and substantive due process rights and constituted a content-based restriction on speech in violation of the First Amendment. We disagree.

### 1. STANDARD OF REVIEW

Again, "[t]his Court reviews de novo a [circuit] court's decision in an appeal from a city's zoning board, while giving great deference to the [circuit] court and zoning board's findings." *Edw C Levy Co*, 293 Mich App at 340 (quotation marks and citation omitted; second and third alterations in original). "Generally, courts review a decision of a zoning board to determine whether it complies with the constitution and the laws of the state, is based on proper procedure, is supported by competent, material, and substantial evidence on the record, and represents the reasonable exercise of the board's discretion. MCL 125.3606." *Great Lakes Soc*, 281 Mich App at 407-408. "We also review de novo constitutional issues and any other questions of law that are raised on appeal." *Cummins v Robinson Twp*, 283 Mich App 677, 690; 770 NW2d 421 (2009).

---

[10] Plaintiffs state that they "dispute" the "swingers club" designation on appeal, but all of the evidence below, including the emails proffered by plaintiffs at the ZBA hearing in support of the club, demonstrate that the club was intended for members who categorized themselves as "swingers" and intended to meet and socialize with other "swingers."

## 2.  PROCEDURAL DUE PROCESS

The United States and Michigan Constitutions guarantee that a person may not be deprived of life, liberty, or property without due process of law.  *In re Parole of Hill*, 298 Mich App 404, 412; 827 NW2d 407 (2012), citing US Const, Am XIV; Const 1963, art 1, § 17.  Even if we assume, solely for the purpose of considering this issue, that plaintiffs have a constitutionally protected interest in the use and possession of the property at issue in this case, see *Bonner v City of Brighton*, 495 Mich 209, 225-226; 848 NW2d 380 (2014); *Mettler Walloon, LLC v Melrose Twp*, 281 Mich App 184, 209; 761 NW2d 293 (2008), the record includes no basis for concluding that plaintiffs' procedural due process rights were violated during the proceedings before the ZBA.  Cf. *Hanlon v Civil Serv Comm'n*, 253 Mich App 710, 722-723; 660 NW2d 74 (2002).

> The essentials of procedural due process are adequate notice, an opportunity to be heard, and a fair and impartial tribunal.  *Cummings v Wayne Co*, 210 Mich App 249, 253; 533 NW2d 13 (1995); MCL 125.293a(1)(a) to (c).  "Administrative procedures must provide the affected party an opportunity to explain its position and rebut adverse evidence."  *Westland Convalescent Ctr v Blue Cross & Blue Shield of Michigan*, 414 Mich 247, 272; 324 NW2d 851 (1982) (opinion by FITZGERALD, J.).  "The critical element provided by a judicial trial or an administrative hearing is the opportunity for a party to present arguments and evidence in support of its position before a decision is rendered, the chance to respond before final action is taken."  *Id*. at 268.  [*Hughes*, 284 Mich App at 69.]

See also *English v Blue Cross Blue Shield of Michigan*, 263 Mich App 449, 459-460; 688 NW2d 523 (2004) (explaining in further detail the elements of procedural due process).

Here, plaintiffs were provided "adequate notice, an opportunity to be heard, and a fair and impartial tribunal."  *Hughes*, 284 Mich App at 69.  Plaintiffs first contend that they were not heard by an impartial tribunal.

> [T]he right to a hearing before an unbiased and impartial decisionmaker is a basic requirement of due process.  Actual bias need not be shown [i]f the situation is one in which experience teaches that the probability of actual bias on the part of a decisionmaker is too high to be constitutionally tolerable.  For example, the following situations present that risk: (1) the decision maker has a pecuniary interest in the outcome; (2) the decision maker has been the target of personal abuse or criticism from the party before the decision maker; (3) the decision maker is enmeshed in other matters involving the petitioner, and (4) the decision maker might have prejudged the case because of prior participation as an accuser, investigator, fact-finder, or initial decision maker. [*Id*. at 70 (quotation marks and citations omitted; alteration in original).]

Plaintiffs do not identify any circumstances analogous to those risks.  Rather, they contend that the ZBA was biased because it reached a decision that was not consistent with the zoning interpretation that they requested, the land use that they presented, and the notice of the hearing

that was provided to plaintiffs and the public. Plaintiffs' characterization of the record with regard to this claim is misleading. Plaintiffs expressly sought an interpretation of "clubs and lodges" in the context of contesting defendant's previous interpretation of the ordinance and the stop-work order issued by the Zoning Administrator. Consistent with the circuit court's conclusion, the record clearly shows that the parties, as well as the ZBA, were aware that plaintiffs were requesting (1) an interpretation of the ordinance finding that their proposed use was permitted in the C-2 district, and (2) a finding that the previous interpretation adopted by defendant was incorrect. Plaintiffs did not request an exhaustive list of all uses that would qualify under the "clubs and lodges" category. The evidence before the ZBA, most of which had been presented to the circuit court in the previous case (LC No. 15-001519-CH), plainly established a land use that could be described as a "swingers' club," and the emails proffered by plaintiff to the ZBA at the hearing further supported this characterization. Therefore, because there is no discrepancy between the interpretation and review requested by plaintiffs and the ZBA's decision, plaintiffs have failed to show that the ZBA was impartial or biased on that basis.

Next, plaintiffs contend that the ZBA was biased and made its decision before the hearing based on (1) the fact that Nelson, one of the newest members, was appointed chairman of the ZBA, (2) the ZBA's receipt of documentation before the hearing, and (3) the fact that there was little substantive discussion of the issues before Nelson, despite his recent appointment, produced and read a proposed decision finding that plaintiffs' proposed use did not fulfill the definition of "clubs and lodges" under the ordinance, which the ZBA adopted by a 6-1 vote. As the circuit court concluded, a reasonable review of the record does not support plaintiffs' characterization of the proceedings.

First, it is apparent that Nelson, a retired circuit court judge, was appointed to be the new chairman due to the recent retirement of the prior chair. There is no indication that this appointment at the beginning of the hearing, at a time when other administrative or "housekeeping" matters were addressed, had anything to do with plaintiffs' case.

Next, the zoning ordinance and the hearing notice acknowledged that the ZBA would receive materials in advance of the meeting. See Summit Township Ordinances, § 150.369(A)(8). See also MCL 125.3604(2) (stating same); *Michigan Zoning, Planning, and Land Use*, pp 257, 259. Consistent with these procedures, the record shows that John Worden, the Zoning Administrator, gave the ZBA documentation associated with plaintiffs' prior zoning applications and the previous circuit court case, which was dismissed based on plaintiffs' failure to appeal the previous zoning decision to the ZBA. Likewise, as previously discussed, plaintiffs proffered, before the hearing, a comprehensive explanation of their position that their proposed use qualified under the "clubs and lodges" category permitted in C-2 zoning districts and that the stop-work order was improper. See Summit Township Ordinances, § 150.369(A)(B) (stating that, in appeals to the ZBA, "[t]he Appellant shall submit a clear description of the order, requirement, decision, or determination from which the appeal is made and the grounds of the appeal."). Just as this Court reviews the lower court record and the parties' briefs before entertaining oral argument, it is clear that receiving and reviewing materials prior to a meeting gives ZBA members an opportunity to review the relevant documentation and, naturally, to begin developing their own opinions regarding the questions at issue. Likewise, given the ZBA's advance receipt of the comprehensive documentation regarding plaintiffs' appeal and

-15-

request for interpretation, it was reasonable for the ZBA members to review the material and develop a preliminary opinion before the meeting began. Doing so does not demonstrate bias.

Furthermore, the record clearly shows that plaintiffs were notified at the beginning of the hearing that specific types of evidence had been received. They could have addressed concerns related to that evidence during their extensive opportunity for argument before the ZBA, but they failed to do so. Instead, after the Chairman Nelson described the documentation that the ZBA had received prior to the hearing, plaintiffs—without raising any objection—commenced their arguments regarding the proper interpretation of the STZO and proffered a presentation by Philip McKenna, a land use planner. Plaintiffs also responded to the arguments presented by defendant during the ZBA hearing, refuting defendant's claims regarding alcohol consumption on the property and arguing that defendant had mischaracterized or concocted their proposed use.

Given the notice that plaintiffs received through the zoning ordinance, the hearing notice, and Nelson's statements at the beginning of the hearing, the record belies plaintiffs' claim that evidence was "secretly" submitted to the ZBA and that they were not provided an opportunity to rebut or object to this evidence. See *Hughes*, 284 Mich App at 70 (reasoning that because the plaintiffs were on notice that certain types of evidence were received by a township board and ZBA, but they failed to raise any concerns regarding that evidence, their due process rights were not violated even though they were not provided an opportunity to specifically rebut the evidence). Likewise, given the procedural requirements of ZBA proceedings and the fact that the hearing constituted, in effect, an appeal of defendant's previous interpretation and enforcement of the zoning ordinance, the ZBA's receipt of documentation ahead of time was not "akin to a judge in a criminal trial hearing testimony and receiving evidence before the trial and then claiming that the defendant had a fair hearing when he failed to object at trial," as plaintiffs claim.

 Therefore, there is no indication that plaintiffs were deprived of a meaningful opportunity to be heard before an impartial decision-maker. See *id*. at 69-70. The "critical element" was met here: plaintiffs were given an extensive "opportunity . . . to present arguments and evidence in support of [their] position before a decision [was] rendered" and "the chance to respond before final action [was] taken." *Id*. at 69 (quotation marks and citation omitted).

### 3. SUBSTANTIVE DUE PROCESS

Even if we assume, once again, for the purpose of considering this issue that plaintiffs have a constitutionally protected interest in the use and possession of the property in this case, see *Bonner*, 495 Mich at 225-226; *Mettler Walloon*, 281 Mich App at 209; *Hanlon*, 253 Mich App at 722-723, there is no basis in the record to conclude that the ZBA's decision violated plaintiffs' substantive due process rights.

Regardless of whether substantive or procedural due process is implicated, the overarching "touchstone of due process . . . is protection of the individual against arbitrary action of government . . . ." *Bonner*, 495 Mich at 224 (quotation marks omitted), quoting *Wolff v McDonnell*, 418 US 539, 558; 94 S Ct 2963; 41 L Ed 2d 935 (1974); see also *Mettler Walloon*, 281 Mich App at 198. However, the substantive component of due process "protects against the arbitrary exercise of governmental power." *Bonner*, 495 Mich at 224. Accordingly, "a

-16-

substantive due process violation occurs when arbitrary and capricious government action deprives an individual of a constitutionally protected property interest." *Warren v City of Athens, Ohio,* 411 F3d 697, 707 (CA 6, 2005).

As the circuit court noted, it appears that plaintiffs have failed to identify the proper standard in asserting their substantive due process claim against the ZBA. "While due process protection in the substantive sense limits what the government may do in both its legislative and its executive capacities, criteria to identify what is fatally arbitrary differ depending on whether it is legislation or a specific act of a governmental officer that is at issue." *Mettler Walloon*, 281 Mich App at 198 (quotation marks and internal citations omitted), quoting *Co of Sacramento v Lewis*, 523 US 833, 846; 118 S Ct 1708, 1716; 140 L Ed 2d 1043 (1998). In this case, plaintiffs did not contend below, and they do not maintain on appeal, that the ordinance itself, *i.e.*, a legislative act of the government, violated their substantive due process rights. Rather, they contend that the ZBA's *interpretation* of the zoning ordinance violated their substantive due process rights. As such, they appear to be challenging, in effect, an action of a municipal officer or authority in applying the ordinance. Thus, because this case involves a "dispute[] over municipal actions," it appears that the focus should be on whether there was egregious or arbitrary governmental conduct." *Mettler Walloon*, 281 Mich App at 197. "[W]hen evaluating municipal conduct vis-à-vis a substantive due process claim, only the most egregious official conduct can be said to be arbitrary in the constitutional sense," meaning that "when executive action is challenged in a substantive due process claim, the claimant must show that the action was so arbitrary (in the constitutional sense) as to shock the conscience." *Id*. at 197, 200. See also *Co of Sacramento*, 523 US at 845-847 (explaining the standards in detail).

However, similar to the standards stated in *Kyser v Twp*, 486 Mich 514, 521-522; 786 NW2d 543 (2010), the case on which plaintiffs rely, opinions issued by this Court have applied the following standards in reviewing a ZBA decision for a denial of substantive due process: To prevail, the plaintiff must prove either "(1) that there is no reasonable governmental interest being advanced by the present zoning classification or (2) that an ordinance is unreasonable because of the purely arbitrary, capricious, and unfounded exclusion of other types of legitimate land use from the area in question." *Frericks v Highland Twp*, 228 Mich App 575, 594; 579 NW2d 441 (1998). *Frericks* also restated the following "basic rules of judicial review" with regard to substantive due process claims:

> (1) the ordinance is presumed valid; (2) the challenger has the burden of proving that the ordinance is an arbitrary and unreasonable restriction upon the owner's use of the property; that the provision in question is an arbitrary fiat, a whimsical ipse dixit; and that there is not room for a legitimate difference of opinion concerning its reasonableness; and (3) the reviewing court gives considerable weight to the findings of the trial judge. [*Id*. (quotation marks and citation omitted).]

Regardless of the specific standard applicable here, plaintiffs' substantive due process claim fails. Plaintiffs' arguments with regard to this issue are nearly identical to their previous arguments challenging the ZBA's construction of the ordinance. In contending that their right to substantive due process was denied, they focus on the reasoning used by the ZBA and the circuit court in interpreting the ordinance, which, according to plaintiffs, consisted of acknowledging

-17-

the dictionary definition of "club" and then proceeding to ignore it, instead developing an arbitrary interpretation that was not consistent with the dictionary definition. For the reasons previous discussed, the ZBA's interpretation was not "an arbitrary fiat" or "a whimsical ipse dixit," see *id.*, as it reasonably concluded that plaintiffs' proposed land use was not consistent with the plain, ordinary, common, and standard definition of "club," when considered in the context of the STZO. Further, and most importantly, plaintiffs again fail to recognize the evidence in the record demonstrating the actual nature of their proposed use, which was not a mere "private membership club." The ZBA's interpretation was reasonable, and the circuit court did not err in affirming the ZBA's determination.

Therefore, for the same reasons already discussed, the ZBA's decision did not violate plaintiffs' right to substantive due process, and the circuit court did not err or otherwise violate plaintiffs' substantive due process rights in affirming the ZBA's decision.

## 4. FIRST AMENDMENT

The United States Supreme Court recently explained the principles applicable to First Amendment challenges to a law on the basis that it constitutes a contest-based restriction on speech:

> The First Amendment, applicable to the States through the Fourteenth Amendment, prohibits the enactment of laws "abridging the freedom of speech." U.S. Const., Amdt. 1.[11] Under that Clause, a government, including a municipal government vested with state authority, "has no power to restrict expression because of its message, its ideas, its subject matter, or its content." *Police Dept. of Chicago v. Mosley,* 408 U.S. 92, 95 (1972). Content-based laws—those that target speech based on its communicative content—are presumptively unconstitutional and may be justified only if the government proves that they are narrowly tailored to serve compelling state interests. *R.A.V. v. St. Paul,* 505 U. S. 377, 395 (1992); *Simon & Schuster, Inc. v. Members of N.Y. State Crime Victims Bd.,* 502 U.S. 105, 115, 118 (1991).

> Government regulation of speech is content based if a law applies to particular speech because of the topic discussed or the idea or message expressed. *E.g., Sorrell v. IMS Health, Inc.,* 564 U.S. ___, ___ – ___, 131 S.Ct. 2653, 2663– 2664, 180 L.Ed.2d 544 (2011); *Carey v. Brown,* 447 U.S. 455, 462 (1980); *Mosley, supra,* at 95. This commonsense meaning of the phrase "content based"

---

[11] Michigan's Constitution includes an analogous provision. See Const 1963, art 1, § 5. "The rights of free speech under the Michigan and federal constitutions are coterminous. Therefore, federal authority construing the First Amendment may be considered in interpreting Michigan's guarantee of free speech." *In re Contempt of Dudzinski*, 257 Mich App 96, 100; 667 NW2d 68 (2003) (citations omitted).

requires a court to consider whether a regulation of speech "on its face" draws distinctions based on the message a speaker conveys. *Sorrell, supra,* at ___, 131 S.Ct. at 2664. Some facial distinctions based on a message are obvious, defining regulated speech by particular subject matter, and others are more subtle, defining regulated speech by its function or purpose. Both are distinctions drawn based on the message a speaker conveys, and, therefore, are subject to strict scrutiny.

> Our precedents have also recognized a separate and additional category of laws that, though facially content neutral, will be considered content-based regulations of speech: laws that cannot be " 'justified without reference to the content of the regulated speech,' " or that were adopted by the government "because of disagreement with the message [the speech] conveys," *Ward v. Rock Against Racism,* 491 U.S. 781, 791 (1989). Those laws, like those that are content based on their face, must also satisfy strict scrutiny. [*Reed v Town of Gilbert, Ariz,* ___ US ___; 135 S Ct 2218, 2226–27; 192 L Ed 2d 236 (2015).]

Thus, "[a]s a general principle, the First Amendment bars the government from dictating what we see or read or speak or hear." *Ashcroft v Free Speech Coal*, 535 US 234, 245; 122 S Ct 1389, 1399; 152 L Ed 2d 403 (2002). Notably, First Amendment protections only extend to speech or "conduct that is inherently expressive." *Rumsfeld v Forum for Acad & Institutional Rights, Inc*, 547 US 47, 66; 126 S Ct 1297, 1310; 164 L Ed 2d 156 (2006). As the United States Supreme Court explained in *Texas v Johnson*, 491 US 397, 404; 109 S Ct 2533, 2539; 105 L Ed 2d 342 (1989):

> The First Amendment literally forbids the abridgment only of "speech," but we have long recognized that its protection does not end at the spoken or written word. While we have rejected the view that an apparently limitless variety of conduct can be labeled "speech" whenever the person engaging in the conduct intends thereby to express an idea, we have acknowledged that conduct may be sufficiently imbued with elements of communication to fall within the scope of the First and Fourteenth Amendments.

> In deciding whether particular conduct possesses sufficient communicative elements to bring the First Amendment into play, we have asked whether [a]n intent to convey a particularized message was present, and [whether] the likelihood was great that the message would be understood by those who viewed it. [Quotation marks and citations omitted; alteration in original.]

First, and most importantly, plaintiffs failed to explain in the circuit court, and they similarly fail to explain on appeal, what exactly is the speech or expressive conduct that was restricted by the STZO or the ZBA's decision. See *id.* Plaintiffs have not identified any speech or conduct that was intended to convey a particular message, and, contrary to plaintiffs' conclusory claims on appeal, a review of the ZBA's opinion shows that the ZBA's decision was

not based on, and did not implicate, any expressive speech or conduct.[12]  Although the ZBA's findings inferred from the information on plaintiffs' website, including the link to "The Swing Lifestyle" network, that the proposed land use would be for a "Swingers Club," and thereafter referred to plaintiffs' proposed use as a "Swingers Club," there is no indication that the STZO—whether on its face or as applied—or the ZBA's decision functioned as a restriction on "expression because of its message, its ideas, its subject matter, or its content." *Reed*, ___ US ___; 135 S Ct at 2226 (quotation marks and citation omitted).

Plaintiffs also claim that "it is clear [from the ZBA's opinion] that the sole basis for the ZBA's decision is its opposition to the use of the building ascribed to [plaintiffs] by the Township."  Plaintiffs again fail to recognize that the evidence in the record, including plaintiffs' own website advertising the forthcoming "club" and the emails proffered by plaintiffs in support of their land use, contradicted their circumscribed and vague description of their proposed land use (*i.e.*, a "private membership club") and support the ZBA's findings regarding plaintiffs' proposed land use.  The argument presented by defendant's attorney during the ZBA hearing may have included brief comments regarding his conceptualization of plaintiffs' proposed use that were speculative or exaggerated, but those statements on behalf of defendant do not undermine the documentation before the ZBA and do not demonstrate that the ZBA's findings were inaccurate, especially given the fact that there is absolutely no indication that the ZBA's decision was based on the characterization presented by defendant's attorney.  See *Edw C Levy Co*, 293 Mich App at 340.

Further, to the extent that plaintiffs base this claim on (1) the ZBA's use of the term "Swingers Club" to reference plaintiffs' proposed use in its decision and (2) the ZBA's explanation that the name attributed to a given land use does not dictate or change the underlying characteristics of the use, it is clear, in reading the entirety of the ZBA's decision in context, that the ZBA used the phrase "Swingers Club" as a term to reference plaintiffs' proposed use as a whole, and that the ZBA's decision was not based on restricting expressive conduct typically associated with adherents to a "swingers lifestyle."  Again, no such conduct was referenced in the ZBA's opinion.  Furthermore, through its reasoning under the "A Name Does Not Make It So" section of its decision, it is apparent that the point that the ZBA was trying to make was that merely characterizing or referring to something as a "club" does not make it a "club" for purposes of the "clubs and lodges" designation under § 150.145 of the STZO.

In sum, the ZBA did not determine that plaintiffs' proposed use failed to qualify under the "clubs and lodges" category based on speech or expressive conduct associated with plaintiffs or with the anticipated patrons of plaintiffs' proposed "club."  Neither the STZO nor the ZBA's

---

[12] Compare, e.g., *Truckor v Erie Twp*, 283 Mich App 154; 771 NW2d 1 (2009) (discussing First Amendment protections afforded to adult entertainment businesses); *Jott, Inc v Charter Twp of Clinton*, 224 Mich App 513; 569 NW2d 841 (1997) (recognizing that "[n]onobscene, erotic entertainment, such as topless dancing, is a form of protected expression under the First Amendment, but enjoys less protection than other forms of First Amendment expression . . . ," and discussing permissible zoning regulations with regard to adult entertainment businesses).

decision was content-based in terms of "target[ing] speech based on its communicative content." *Reed*, ___ US ___; 135 S Ct at 2226.

## IV.  DOCKET NO. 329060

Plaintiffs argue that the trial court improperly granted defendant's motion for summary disposition because they were not required to pursue administrative remedies for a variety of reasons, including, *inter alia*, that they had a "vested right" in their proposed land use.  We conclude that it is no longer necessary for us to consider whether the trial court properly dismissed plaintiff's complaint without prejudice in Docket No. 329060 (LC No. 15-001519-CH).

As previously mentioned, the trial court dismissed plaintiffs' complaint without prejudice solely because plaintiffs filed a lawsuit instead of appealing the administrative zoning decision to the ZBA.  Plaintiffs then filed their claim of appeal in Docket No. 329060, ultimately arguing that the trial court's dismissal of the complaint was improper (1) because plaintiffs were not required to exhaust their administrative remedies for several reasons (including that a dismissal for failure to exhaust administrative remedies is improper when a party has a vested right in a particular land use), and (2) because the principles in *Paragon Properties Co v Novi*, 452 Mich 568; 550 NW2d 772 (1996), were not otherwise applicable in this case.  Accordingly, the gravamen of plaintiffs' appeal in Docket No. 329060 is that they should not be required to take any action before the ZBA and, instead, this Court should reinstate the prior circuit court action and enter a judgment in favor of plaintiffs.  Nevertheless, shortly after filing the claim of appeal contesting the trial court's conclusion that they were required to exhaust their administrative remedies, plaintiffs did, in fact, file an appeal with the ZBA, seeking interpretation of the STZO based on their claim that defendant erroneously interpreted the STZO and, therefore, improperly issued a stop-work order.  Because all of plaintiffs' claims in Docket No. 329060 specifically contested the trial court's ruling that dismissal was proper based on plaintiffs' failure to appeal defendant's interpretation of the ordinance and related administrative action to the ZBA, the appeal in Docket No. 329060 is moot.  Alternatively, at the very least, it is no longer appropriate for us to analyze plaintiffs' claims in that matter given the factual and legal findings made by the ZBA and the circuit court after plaintiffs filed their appeal.

In *People v Richmond*, 486 Mich 29, 34-35; 782 NW2d 187 (2010), reh granted in part 486 Mich 1041 (2010), amended by 784 NW2d 204 (2010), the Michigan Supreme Court provided an overview of the mootness doctrine:[13]

> It is well established that a court will not decide moot issues.  This is because it is the "principal duty of this Court . . . to decide actual cases and controversies."  *Federated Publications, Inc v City of Lansing*, 467 Mich 98, 112; 649 NW2d 383 (2002), citing *Anway v Grand Rapids R Co*, 211 Mich 592, 610; 179 NW 350 (1920).  That is, " '[t]he judicial power . . . is the right to determine

---

[13] Although *Richmond* is a criminal case, the Court's reliance on civil caselaw for each proposition demonstrates that this overview is equally applicable in civil cases.

actual controversies arising between adverse litigants, duly instituted in courts of proper jurisdiction.' " *Anway*, 211 Mich at 616 (citation omitted). *As a result, "this Court does not reach moot questions or declare principles or rules of law that have no practical legal effect in the case before" it. Federated Publications*, 467 Mich at 112. Although an issue is moot, however, it is nevertheless justiciable if "the issue is one of public significance that is likely to recur, yet evade judicial review." *Id.* It is " 'universally understood . . . that a moot case is one which seeks to get a judgment on a pretended controversy, when in reality there is none, . . . *or a judgment upon some matter which, when rendered, for any reason, cannot have any practical legal effect upon a then existing controversy.' " Anway*, 211 Mich at 610, quoting *Ex parte Steele*, 162 F 694, 701 (ND Ala, 1908). *Accordingly, a case is moot when it presents "nothing but abstract questions of law which do not rest upon existing facts* or rights." *Gildemeister v Lindsay*, 212 Mich 299, 302; 180 NW 633 (1920).

In general, because reviewing a moot question would be a " 'purposeless proceeding,' " *Stern v Stern*, 327 Mich 531, 534; 42 NW2d 737 (1950) (citation omitted), appellate courts will sua sponte refuse to hear cases that they do not have the power to decide, including cases that are moot, *In re MCI Telecom Complaint*, 460 Mich 396, 434 n 13; 596 NW2d 164 (1999), citing *Ideal Furnace Co v Int'l Molders Union of North America*, 204 Mich 311; 169 NW 946 (1918).[2] Whether a case is moot is a threshold issue that a court addresses before it reaches the substantive issues of the case itself. *In re MCI*, 460 Mich at 435 n 13. [Emphasis added.]

---

[2] Indeed, because a court should, on its own motion, recognize and reject claims that it does not have the power to decide, defendant's failure to raise the mootness argument at the Court of Appeals is irrelevant to this Court's analysis. See *In re MCI*, 460 Mich at 434-435 n 13.

---

See also *AFT Michigan v State of Michigan*, ___ Mich App ___, ___; ___ NW2d ___ (2016) (Docket Nos. 303702, 303704, 303706); slip op at __.

If we were to issue a decision determining whether the trial court erred in dismissing the first circuit court case based on the fact that plaintiffs had failed to pursue their administrative remedies with the ZBA at that time, that decision would constitute "a judgment upon some matter which, when rendered, for any reason, cannot have any practical legal effect upon a then existing controversy." *Richmond*, 486 Mich at 34-35 (quotation marks and citation omitted). Plaintiffs now have performed the task that served as the basis of the dismissal, and a separate factual and procedural record has been developed.

Therefore, to the extent that plaintiffs maintain in Docket No. 329060 that their proposed use is permitted under the ordinance and, in addition, raise a series of claims related to defendant's interpretation of the zoning ordinance and issuance of the stop-work order, the proper place for those claims to be decided is in an appeal of the ZBA's determination, which is currently before us in Docket No. 334355 and which we have considered in detail. Likewise, given the significant procedural history that developed after the appeal in Docket No. 329060

was filed, and the findings made by the ZBA and circuit court during the proceedings giving rise to the appeal in Docket No. 334355, it would be inappropriate for us to decide the myriad of subclaims that plaintiff raises in Docket No. 329060 arising from the trial court's dismissal of their case based on their failure to exhaust their administrative remedies.

Further, these claims were not developed or decided in the circuit court given the limited basis of the trial court's dismissal, which would make it extremely difficult, if not impossible, for us to review them on appeal, especially given the lack of clarity in the record regarding the specific nature of the zoning-related filings and administrative decisions that were made before defendant ultimately issued the stop-work order. See *Gen Motors Corp v Dep't of Treasury*, 290 Mich App 355, 387; 803 NW2d 698 (2010) ("Although this Court need not address an unpreserved issue, it may overlook preservation requirements when the failure to consider an issue would result in manifest injustice, if consideration is necessary for a proper determination of the case, or if the issue involves a question of law and the facts necessary for its resolution have been presented.")

The circuit court case in Docket No. 329060 was dismissed without prejudice. Thus, to the extent that plaintiffs continue to possess viable claims against defendant that were not raised or resolved in the proceedings and appeal related to the ZBA's decision in Docket No. 334355, and could not have been resolved during these proceedings, the appropriate place for resolution of those claims is in a separate case, not in this appeal of the trial court's dismissal of plaintiffs' complaint without prejudice. See *Thomas v Michigan Employment Sec Comm'n*, 154 Mich App 736, 742; 398 NW2d 514 (1986) ("The inclusion of the term 'without prejudice' in a judgment of dismissal ordinarily indicates the absence of a decision on the merits, and leaves the parties free to litigate the matter in a subsequent action, as though the dismissed action had not been commenced.") (quotation marks and citation omitted).

## V. CONCLUSION

Plaintiffs have failed to establish that they are entitled to relief based on any of the claims raised in Docket No. 329060 and Docket No. 334355.

Affirmed.

/s/ Joel P. Hoekstra
/s/ Henry William Saad
/s/ Michael J. Riordan