**Michigan Supreme Court**
**Lansing, Michigan 48909**

# Opinion

Chief Justice
Maura D. Corrigan

Justices
Michael F. Cavanagh
Elizabeth A. Weaver
Marilyn Kelly
Clifford W. Taylor
Robert P. Young, Jr.
Stephen J. Markman

**FILED DECEMBER 11, 2003**

JAMES SOUPAL, GERI SOUPAL,
ALAN HAY AND SANDRA HAY,

    Plaintiffs-Appellants,

v                            No. 123698

SHADY VIEW, INC.,

    Defendant-Appellee.

_____

PER CURIAM

    The question before the Court is whether an association of multiple families may provide a communal access to Higgins Lake notwithstanding the local zoning ordinance that permits only single-family uses on the property owned by the association. We conclude that the association's communal use of the property violates the zoning ordinance. We vacate the judgments of the lower courts and remand the matter to the circuit court for

further proceedings consistent with the zoning ordinance and this opinion.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs are the owners of the riparian properties that are adjacent to lot 139 of Woodlawn Subdivision on Higgins Lake. Lot 139 is zoned "Residential District 1" (R-1) according to the Gerrish Township Zoning Ordinance. Defendant, a nonprofit association of numerous families, owns lot 139. It was authorized to issue twenty shares of stock, nineteen of which were sold to individual shareholders who are owners of other nonlakefront lots in the subdivision. Defendant bought lot 139 specifically to provide communal access to the lake for use by its nonriparian shareholders. Among the modifications to the property made by the defendant was the construction of a dock that was 160 feet long with twenty boat slips. A cabin on the lot, which had been used by prior titleholders as a single-family seasonal cottage, was converted to function as a community center for defendant's shareholders.

In June 1996, plaintiffs sought to enjoin defendant's construction of a dock and operation of a marina on lot 139. Plaintiffs alleged (1) that such use of lot 139 was in violation of the zoning ordinance, which designates lot 139 as R-1, and (2) that such use was a nuisance per se

2

that disturbed the peace and reasonable uses of plaintiffs' property.[1]

Following a bench trial, the circuit court ruled that defendant's use constituted a "marina" as defined by the zoning ordinance,[2] that the zoning ordinance did not allow that use, and that defendant's use was unreasonable, and constituted a nuisance in fact and a nuisance per se. The court enjoined defendant from placing a dock longer than seventy-five feet, from mooring more than five boats, and from having more than two families at any time use the facility.

In a divided, unpublished decision, the Court of Appeals reversed the decision of the circuit court, and ruled that the zoning ordinance does not prohibit the operation of marinas on property classified as R-1, that

---

[1] This case has had an extensive procedural history. The initial trial judge denied plaintiffs' request for injunctive relief based on the zoning ordinance violation theory, but he retained jurisdiction over the nuisance per se claim pending completion of related administrative proceedings before the Department of Environmental Quality concerning defendant's application with that agency for a formal marina operation permit. Eventually, the DEQ granted defendant's application for a 160-foot dock and mooring for twenty pleasure boats, but it acknowledged that it lacked jurisdiction over plaintiffs' claims under the zoning ordinance. The case then returned to the circuit court for further proceedings.

[2] The ordinance defines "marina" as "[a] facility which is owned or operated by a person, extends into or over an inland lake or stream and offers services to the public or members of the marina for docking, loading or other servicing of recreational watercraft." Art III, § 3.1.

3

defendant's marina is not a commercial enterprise,[3] and that the dock is neither a nuisance per se nor a nuisance in fact.[4]  The majority held in part that the circuit court's issuance of the injunction was error requiring reversal because "it was based on an erroneous finding that the dock was a nuisance."

The Court of Appeals dissenter would have held that defendant's combination of uses of the property ("forming a corporation, soliciting funds, selling stock in the corporation, purchasing land, constructing a twenty-slip marina, using the existing structure on the land as a community center, and charging yearly dues to use the marina and the community center") violated the zoning ordinance, and that the "noise," "unsightly condition," and "excessive traffic" amounted to a nuisance per se.  The dissenter concluded that "[a]ll marinas are commercial in some respect" and that "[c]learly not every resident on Higgins Lake would be permitted to turn their property into a marina for multiple families and watercraft.  That is precisely the situation zoning laws protect against and the very definition of a nuisance."

---

[3] The ordinance prohibits "[a]ll enterprises of a commercial nature, excepting home occupation and rental of buildings . . . ."  Art VI, part A, § 6.7(d).

[4] Unpublished opinion per curiam, issued February 28, 2003 (Docket No. 231443).

## II.  STANDARD OF REVIEW

This Court reviews de novo matters of statutory construction, including the interpretation of ordinances. *Gora v Ferndale*, 456 Mich 704, 711; 576 NW2d 141 (1998).

## III. THE ORDINANCE

Article IV, § 4.1 of the Gerrish Township Zoning Ordinance provides in part:

> Except as is hereinafter provided, no buildings shall be erected, altered, or moved *and no lands* or buildings *shall be used for any purpose other than the types and uses permitted in the respective District* in which such lands or buildings are located.  [Emphasis added.]

Article VI of the ordinance governs "Residential Districts," and art VI, part A, § 6.1 governs the R-1 classification, which applies to lot 139.  As is relevant here, the R-1 classification permits "dwellings," "[a]ccessory buildings or structures," and "[a]ccessory uses and activity related to principal use."  It is apparent from the trial testimony that the cabin on lot 139 was designed to be a single-family dwelling and was so used until purchased by defendant.

The zoning ordinance's definitions are contained in article III, § 3.1. "Dwelling, One-Family," is defined as "[a] detached building designed for or occupied by one (1) family and so arranged as to provide living, cooking, and

kitchen accommodations for one (1) family only.  Also known as a single-family dwelling."[5]  *Id*.  "Family" is defined as:

> a.  One (1) person or two or more persons living together in one (1) dwelling unit and related by bonds of marriage, blood, or legal adoption (may include up to a total of three (3) additional persons not so related who are either domestic servants or servants or gratuitous guest), comprising a single housekeeping unit, or;

> b.  A group of not more than four (4) persons not related [by] blood, marriage or adoption, living together as a single housekeeping unit.  [*Id*.]

Article VI, part A, § 6.1 of the ordinance is entitled "Buildings and Uses Permitted."  Section 6.1(b) permits accessory buildings or structures such as "[g]arage[s], and storage buildings," but only if "used . . . as an accessory to the main dwelling."  Section 6.1(b) additionally permits "[s]tructures such as steel towers, antenna masts, antennas, [and] flagpoles," as well as "[a]ccessory uses and activity *related to principal use*."  (Emphasis added.) The ordinance defines "Principal Building or Use" as "the principal or primary purpose for which a building or parcel of land may be designed, arranged, intended, maintained or occupied."  Art III, § 3.1.  Article VI, part A, § 6.8, "Parking Storage," provides that "[t]he owner or owners of boats may park or store such boats on his or their property

---

[5]  Multiple-family dwellings are allowed in *R-2* districts, a classification that does not include lot 139.

6

providing that said property is zoned for residential use and occupied by residential dwellings."

## IV. ANALYSIS

In considering the alleged violation of the zoning ordinance, the threshold issue is whether defendant's use is consistent with the uses permitted in an R-1 district. Those uses are limited under art III, § 3.1, and art VI, part A, § 6.1 to activities and buildings related to *single-family* use. The Court of Appeals failed to address this threshold issue, focusing instead on the alleged "commercial" aspect of plaintiff's marina. If the proposed use is inconsistent with single-family use, it is immaterial whether the property is being used for a "commercial" purpose. Because we conclude that defendant's use of the property is inconsistent with its single-family designation, we hold that the circuit court correctly ruled that the use constituted a nuisance per se.

Even assuming that the Court of Appeals correctly ruled that defendant's marina is not *commercial*, the marina nevertheless is in violation of the zoning ordinance because of the prohibition in art IV, § 4.1 of the use of land "for any purpose other than the types and uses permitted in the respective Districts . . . ." The occupation of the lot by a multiple-family association and the operation of an oversized marina containing twenty boat

7

slips are not permitted uses in an R-1 district.  The use of the former cottage as a community building is not a permitted use under the ordinance.  The ordinance provides that a "Dwelling Unit" must be "occupied exclusively as the home, residence or sleeping place of one (1) family . . . ."  Art III, § 3.1.  It is clear that neither defendant nor its nineteen shareholders qualify as a "family" as defined by the ordinance.

Furthermore, operation of a twenty-boat-slip marina and a community house is not an "[a]ccessory use" that is "related to [the] principal use" of the R-1 lot under § 6.1(b)3.  The ordinance defines "Principal Building or Use" as "the principal or primary purpose for which a building or parcel of land may be designed, arranged, intended, maintained, or occupied."  Art III, § 3.1.  It is clear from the testimony that the cabin on lot 139 was designed to be a single-family dwelling.  The lot, with its seventy-seven feet of lake frontage, was intended to support that use.  Operating the marina, irrespective of its commercial or noncommercial nature, is not "related" to the property's permitted use as a single-family dwelling.

MCL 125.587 provides in relevant part that a "building . . . converted, or a use carried on in violation of a local ordinance . . . is a nuisance per se.  The court shall order the nuisance abated . . . ."  Because the

8

circuit court correctly ruled that defendant's use violated the zoning ordinance, it was also correct in ruling that such use was a nuisance per se. The Court of Appeals majority erred in reaching a contrary conclusion.

However, the circuit court's ruling, which allowed the families of two of defendant's shareholders at any time to use a seventy-five-foot dock on which up to five boats could be moored, is inconsistent with the township's ordinance provisions concerning single-family dwellings. We therefore vacate that portion of the circuit court's judgment and remand for further action consistent with this opinion.

> Maura D. Corrigan
> Michael F. Cavanagh
> Clifford W. Taylor
> Robert P. Young, Jr.
> Stephen J. Markman

# STATE OF MICHIGAN

## SUPREME COURT

JAMES SOUPAL, GERI SOUPAL,
ALAN HAY AND SANDRA HAY,

     Plaintiffs-Appellants,

v                                                          No. 123698

SHADY VIEW, INC.,

     Defendant-Appellee.

_____

WEAVER, J. (*concurring*).

    I concur in the result of the opinion per curiam because defendant's use of the property is not consistent with the buildings and uses permitted in R-1 districts under the Gerrish Township zoning ordinance.

                               Elizabeth A. Weaver
                               Marilyn Kelly