*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

MICHAEL ANSCOMB and MEGAN ANSCOMB,

Plaintiffs-Appellees,

v

TOWNSHIP OF FRANKENMUTH ZONING
BOARD OF APPEALS,

Defendant-Appellant.

UNPUBLISHED
August 25, 2022

No. 358016
Saginaw Circuit Court
LC No. 21-044363-AA

Before: SWARTZLE, P.J., and RONAYNE KRAUSE and GARRETT, JJ.

PER CURIAM.

In this zoning dispute, defendant, Township of Frankenmuth Zoning Board of Appeals (ZBA), appeals as of right the circuit court's order reversing the ZBA's decision to deny a residential building permit to plaintiffs. We affirm.

## I. BACKGROUND

On January 20, 2021, plaintiffs purchased a 40-acre parcel of property located in Frankenmuth Township. Most of the lot is a "back forty" squarish parcel of heavily-wooded land, mostly surrounded on all four sides by fields. The parcel is connected to a road by a strip of land 33 feet wide and approximately 1,300 feet long, running the length of what would otherwise be the "front" 40 acres. The property is located in the township's A-1 Rural Agricultural Zoning District. According to plaintiffs, they contacted a township building inspector before purchasing the property, seeking to determine whether the lot was buildable. Plaintiffs were referred to the township zoning administrator. Plaintiffs allegedly informed the zoning administrator by telephone on November 10, 2020, that they would only buy the lot if it was buildable, and the zoning administrator assured them that "the lot would be grandfathered in and is 100% a buildable lot." The ZBA disputes that the zoning administrator informed plaintiffs that the lot was buildable, and the zoning administrator later denied remembering that she told plaintiffs the lot was buildable. Plaintiffs purchased the lot and applied for a building permit.

On February 19, 2021, plaintiffs contacted the building inspector to check on the status of their building permit. The building inspector again referred plaintiffs to the zoning administrator.

By telephone, the zoning administrator informed plaintiffs that the lot was not buildable and that she did not recall making any statement to the contrary. At the zoning administrator's suggestion, plaintiffs then contacted a member of the ZBA and the township supervisor. According to plaintiffs, the township supervisor intended to review the matter and prepare a letter for plaintiffs with the township's decision on the matter. According to defendant, the phone call to the zoning administrator constituted a formal denial of the permit, the letter was a privileged attorney-client communication, and the letter was provided to plaintiffs as a mere courtesy. On March 9, 2021, plaintiffs received a text message from the township supervisor informing them that they would receive the letter that day. Plaintiffs received a letter prepared by the township's attorney via email on March 10, 2021. The attorney opinion letter concluded that the lot was not a buildable parcel because it did not meet the site development standard under zoning ordinance § 804(2)(a), requiring that all lots be 200 feet in width at the front building line. The letter further advised that plaintiffs would need to seek a variance from the ZBA if they chose to build on the lot. The same day plaintiffs received the emailed letter, plaintiffs filed a notice of appeal to the ZBA.

On March 25, 2021, the ZBA held a hearing on the matter. Plaintiffs argued, in relevant part, that a fair and reasonable reading of the zoning ordinance was that the "front building line" was not synonymous with "front property line," so their lot satisfied all of the ordinance requirements to be buildable. Plaintiffs argued that, in the alternative, the ZBA should grant a variance in light of two considerations. First, the lot was created in 2003—before the effective date of the ordinance—and should therefore be "grandfathered." Secondly, they were entitled to rely on the zoning administrator's statement that the lot would be buildable. According to the minutes of the hearing, the president of the ZBA stated "that the 200 feet of frontage was always considered from the street." The ZBA denied plaintiffs' request for relief, and it issued a written order to that effect on March 30, 2021. On April 22, 2021, plaintiffs timely[1] appealed the ZBA's decision to the circuit court.

In the circuit court, plaintiffs generally reiterated that the ZBA misinterpreted its ordinance to require 200 feet of road frontage, and, in the alternative, the ZBA abused its discretion by refusing to grant a non-use variance. Defendant reiterated that the "front building line" was necessarily coextensive with the street frontage, because street frontage established the area within which a building could be located. Defendant further disputed that plaintiff's lot was "grandfathered," and it argued that a variance would not be appropriate under the circumstances. Defendant also raised two new issues. First, defendant argued that plaintiffs had not timely appealed the denial of their building permit to the ZBA, which divested the ZBA of subject-matter jurisdiction and therefore also precluded the circuit court from having subject-matter jurisdiction. Secondly, plaintiffs' lot was not buildable pursuant to a different requirement of zoning ordinance § 804(2)(a), which required a width-to-depth ratio of no more than 1-to-2; defendant claimed the lot was only 33 feet wide, so the meaning of "front building line" was moot.

The trial court held a hearing and entered a written opinion and order. The trial court rejected the argument that the ZBA lacked jurisdiction, concluding that the township's final

---

[1] As will be discussed, defendant argues that plaintiffs did not timely appeal to the ZBA. However, defendant does not challenge the timeliness of plaintiffs' appeal to the circuit court.

decision was given to plaintiffs in the form of the letter on March 10, 2021. Considering all the record evidence before it, the trial court concluded that it was clear that the March 10 letter was intended to be the township's final decision, rather than the telephone conversation with zoning administrator. The trial court further admonished defendant that "you can't pick and choose when it's okay to listen to the zoning administrator verbally." The trial court also refused to consider the width-to-depth issue following defendant's concession at the hearing that there was no record evidence the ZBA relied on that issue in denying the building permit. Furthermore, the trial court rejected defendant's argument that "front building line" was synonymous with street frontage on the basis of historical interpretation, explaining that the plain language of the ordinance did not support any such interpretation. The trial court finally concluded that it did not need to address issues of "grandfathering," equitable estoppel, or the variance. It ordered that the building permit must be approved. After the trial court denied a motion for reconsideration from defendant, this appeal followed.

## II. STANDARDS OF REVIEW

"The decision of a zoning board of appeals should be affirmed unless it is contrary to law, based on improper procedure, not supported by competent, material, and substantial evidence on the record, or an abuse of discretion." *Janssen v Holland Charter Twp Zoning Bd of Appeals*, 252 Mich App 197, 201; 651 NW2d 464 (2002). We review de novo "the circuit court's determination regarding ZBA findings to determine whether the lower court applied correct legal principles and whether it misapprehended or grossly misapplied the substantial evidence test to the ZBA's factual findings." *Huges v Almena Twp*, 284 Mich App 50, 60; 771 NW2d 453 (2009) (quotation and brackets omitted). Generally, this Court gives "great deference to the trial court and zoning board's findings." *Norman Corp v East Tawas (On Remand)*, 263 Mich App 194, 198; 687 NW2d 861 (2004).

Conversely, a reviewing court should give deference to a municipality's established historical interpretation of its own ordinances only if the ordinance is ambiguous and the municipality's interpretation is reasonable. *Macenas v Village of Michiana*, 433 Mich 380, 397-398; 446 NW2d 102 (1989); *Sinelli v Birmingham Bd of Zoning Appeals*, 1960 Mich App 649, 653-654; 408 NW2d 412 (1987). A municipality's historical interpretation of its own ordinance is not entitled to any weight if the language used in the ordinance is clear and unambiguous. *Kalinoff v Columbus Twp*, 214 Mich App 7, 10-11; 542 NW2d 276 (1995). "This Court reviews de novo matters of statutory construction, including the interpretation of ordinances." *Soupal v Shady View, Inc*, 469 Mich 458, 462; 672 NW2d 171 (2003). "Municipal ordinances are interpreted and reviewed in the same manner as statutes." *Grand Rapids v Brookstone Capital, LLC*, 334 Mich App 452, 457; 965 NW2d 232 (2020) (quotation marks and citation omitted). If the language is unambiguous, "the proper role of a court is simply to apply the terms of the statute to the circumstances in a particular case." *Veenstra v Washtenaw Country Club*, 466 Mich 155, 159-160; 645 NW2d 643 (2002). It is necessarily an abuse of discretion to make a decision premised upon an error of law. See *Ronnisch Constr Group, Inc v Lofts on the Nine, LLC*, 499 Mich 544, 552; 886 NW2d 113 (2016).

This Court reviews de novo whether a circuit court has subject-matter jurisdiction over a case. *Quality Market v Detroit Bd of Zoning Appeals*, 331 Mich App 388, 393; 952 NW2d 603 (2019).

### III.  SUBJECT-MATTER JURISDICTION

Defendant contends that plaintiffs' appeal to the ZBA was untimely, thereby depriving the ZBA, and as a consequence the circuit court, of subject-matter jurisdiction over this matter.  We disagree.

Frankenmuth Township Rural Zoning Ordinance § 1204(3), which governs appeals to the Zoning Board of Appeals, states:

> Any appeal from the rulings of the Administrative Staff concerning the interpretation or enforcement of the provisions of this ordinance shall be made to the board of appeals within ten (10) days *after the date of decision causing appeal*.  Such appeal shall be filed with the Zoning Administrator and *shall specify the grounds for the appeal*.  [Frankenmuth Township Zoning Ordinance § 1204(3) (emphasis added).]

The ordinance expressly states that "the term 'shall' is always mandatory and not discretionary." Ordinance § 201(4); see also *Roberts v Mecosta Co General Hospital*, 466 Mich 57, 65; 642 NW2d 663 (2002).  However, as the trial court noted, nowhere in the ordinance is compliance with the ten-day deadline expressly stated to be jurisdictional.  Presuming plaintiffs' appeal to the ZBA was untimely, the fact that the ZBA in fact took up plaintiffs' appeal suggests that the ZBA did not believe there to be any jurisdictional defect.  Because the ordinance does not state that noncompliance with the ten-day deadline is jurisdictional, the ordinance is ambiguous on that point, and the ZBA's implicit interpretation that the deadline is non-jurisdictional would be reasonable.

In any event, statutes must be read as a whole, individual words or phrases must be considered in context, and no part of the statute should be rendered surplusage or nugatory. *Michigan Properties, LLC v Meridian Twp*, 491 Mich 518, 528; 817 NW2d 548 (2012).  Although the ordinance does not explicitly define the term "Administrative Staff," the ordinance provides that "[t]he Township Board of Trustees shall employ a Zoning Administrator, a Code Enforcement Officer, and a Building Inspector to act as its officers to affect proper and adequate administration of this ordinance."  Ordinance § 1201(1).  It is "the duty of the Building Inspector to issue any necessary building permit and when such permit is denied, to state refusal in writing, with cause." Ordinance § 1201(5)(d).  Conversely, the enumerated duties of the zoning administrator in Ordinance § 1201(2) do not include issuing or denying building permits.  Plaintiffs' application for a building permit triggered § 1201(5)(d), because the permit would either be issued or denied. Although this section of the ordinance is not a model of clarity, it clearly contemplates a *written* denial *including an explanation for the denial*, and the source of that denial should be the building inspector rather than the zoning administrator.  Furthermore, without receiving a statement of cause, it would be impossible for a person denied a permit to comply with the requirement in § 1204(3) of specifying the grounds for the appeal.  The telephone conversation with the zoning administrator on February 19, 2021, cannot have been a proper, formal denial of the building permit that would trigger the ten-day deadline for appealing to the ZBA.

Defendant further argues that the township's attorney opinion letter could not serve as the written decision because the township's attorney did not have authority to deny the building

permit. Although the ZBA is correct that the township's attorney does not have authority to deny the permit under the zoning ordinance, plaintiffs were provided the March 10 letter with the representation that this was the township's decision on the matter. Defendant argues that the letter was an internal, implicitly privileged, attorney-client communication, and it was merely given to plaintiffs as a courtesy. A plain reading of the letter clearly demonstrates otherwise, if for no other reason than the sheer number of times the township attorney went to great pains to emphasize and reemphasize that the township did not concede that the zoning administrator informed plaintiffs on November 10, 2020, that the lot was buildable. The letter also never indicates that it is confidential or privileged. Rather, the letter was plainly intended to be read by persons other than the township board. Under the totality of the circumstances, the trial court correctly determined that the denial of the building permit came in the form of the letter on March 10, 2021.[2]

We also agree with the trial court that defendant is trying to "have it both ways," for two reasons. First, if the zoning administrator's undocumented statement by telephone on February 19, 2021, can constitute a formal and official determination by the township, then there is no apparent reason why the zoning administrator's undocumented statement on November 10, 2020, cannot *also* constitute a formal and official determination by the township. Secondly, the township attorney's own letter emphasizes that municipalities do not speak through individuals. By the township attorney's own logic, the zoning administrator's telephoned statement that the permit was denied could not, therefore, be the *township's* decision.

In sum, it is highly doubtful that the ten-day deadline was actually jurisdictional, and in any event, plaintiffs' appeal to the ZBA was timely on these facts.

IV. FRONT BUILDING LINE

In relevant part, ordinance § 804(2)(a) provides that "[e]ach lot shall be a minimum of two hundred (200) feet in width at the front building line." Ordinance § 202(9) defines "building lines" as "[a] line defining the minimum front, side or rear yard requirements outside of which no building or structure may be located." Ordinance § 202(8) defines the front building line as "[t]he line that coincides with the face of the building nearest the front line of the lot." Ordinance § 202(40) provides that "every lot shall abut upon and have permanent access to a public street." Ordinance § 202(43) provides that the front lot line is the "line separating the lot from the street or place," and pursuant to ordinance § 202(44), the lot line width is "measured along the front lot line or street line."

Defendant asserts that, pursuant to its historical interpretation of the ordinance, § 804(2)(a) requires plaintiffs' lot to have a minimum of 200 feet in width of frontage on the road it abuts, and plaintiffs cannot meet this requirement because their lot is only 33 feet in width. We disagree. Initially, we note that defendant repeatedly insists that plaintiffs' lot is only 33 feet wide, which is blatantly untrue: their lot is 33 feet wide at the road, but the overwhelming majority of their 40

---

[2] In any event, even if the letter was not, itself, the township's decision to deny the permit, the letter minimally constituted a written statement setting forth the denial and providing an explanation for the denial. Therefore, until plaintiffs received the letter, the township had not fully effectuated its denial of the permit, and, again, the ten-day deadline was not triggered.

acres is obviously somewhere in the vicinity of 1,300 feet wide. The plain and unambiguous language of the ordinance establishes that the "building line" is *not* the same as the "lot line," irrespective of whatever historical interpretation might have been made by the township. Indeed, § 202(8) provides that the front building line is "parallel to the front lot line and measured as a straight line between the intersecting points with the side yard." It could not possibly be more clear that the front building line is therefore not the front lot line and is not measured based on street frontage. Presumably, the front building line and the front lot line would tend to be *coincidentally* identical in a traditional city lot. Defendant, however, seems to misapprehend the unusual shape of plaintiffs' lot—which obviously has ample room for construction of an ordinary residence within the squarish portion of the 40 acres. Although the "front lot line" of plaintiffs' property, as defined by Ordinance § 202(43), may be 33 feet, that fact is utterly irrelevant. The "front building line" within the meaning of § 202(8) would be based upon the 1,300-foot-width of the main portion of plaintiffs' property where plaintiffs actually intend to construct their residence.[3]

Therefore, the trial court correctly determined that the ordinance did not preclude plaintiffs from building on their lot.

## V. MOOTNESS

Lastly, defendants argue that plaintiffs' appeal is moot because, even if plaintiffs are correct regarding street frontage, another provision of ordinance § 804(2)(a) renders their lot unbuildable. Specifically, § 804(2)(a) provides that a lot must have a "maximum lot width to depth ratio of 1:2." We find this argument meritless.

As the trial court found, and as defendant conceded at the trial court's hearing, nothing in the record supports the proposition that the ZBA addressed or ruled on this issue. Therefore, there was no decision regarding this issue that could be reviewed on the record. *Janssen*, 252 Mich App at 201. Nevertheless, defendant seemingly maintains the position that it could still deny the permit on this basis, and the record is sufficient to dispose of this issue now. See *Steward v Panek*, 251 Mich App 546, 554; 652 NW2d 232 (2002). In the interest of economy, we therefore briefly observe that § 804(2)(a) does not discuss "lot line width," but rather only "lot width." The use of different words generally indicates different meanings. See *United States Fidelity & Guaranty Co v Mich Catastrophic Claims Ass'n (On Reh)*, 484 Mich 1, 14; 795 NW2d 101 (2009). Plaintiffs' lot is, in effect, an ordinary 80-acre half-of-a-quarter-section parcel with most of the front 40 acres carved out; in other words, the *lot* is approximately 1,300 feet wide by approximately 2,600 feet long. It therefore has a width-to-depth ratio of exactly 1:2. Even if considered, this argument

---

[3] Plaintiffs note Ordinance § 302(2), which provides that "[a]ny lot of record created after the effective date of this ordinance shall have frontage on a public street, except as may be approved as a planned unit development in accordance with the provisions of this ordinance measured at the public street." Plaintiffs accurately observe that their lot was created before the effective date of the ordinance. In any event, § 302(2) does not obviously appear to specify how much frontage is required, and as far as we can determine defendant does not rely on this section.

defies the obvious reality of the lot and is meritless.  Plaintiffs, being the prevailing parties, may tax costs pursuant to MCR 7.219(A).

       Affirmed.

                      /s/ Brock A. Swartzle
                      /s/ Amy Ronayne Krause
                      /s/ Kristina Robinson Garrett