*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

SCOTT ALAN HILL, Individually and as Trustee of
the SCOTT ALAN HILL LIVING TRUST,

UNPUBLISHED
July 09, 2025
11:48 AM

Plaintiffs-Appellants,

v

No. 367670
Calhoun Circuit Court
LC No. 2022-003099-CZ

MARENGO TOWNSHIP,

Defendant-Appellee.

Before: O'BRIEN, P.J., and M. J. KELLY and KOROBKIN, JJ.

PER CURIAM.

In this action involving local permits to grow marijuana, plaintiff, Scott Alan Hill,
individually and as trustee of the Scott Alan Hill Living Trust, appeals by right the trial court's
order granting summary disposition to defendant, Marengo Township, under MCR 2.116(C)(7)
(immunity granted by law) and (C)(8) (failure to state a claim on which relief can be granted).
Because we agree with the trial court that plaintiff has failed to plead viable claims premised on
promissory estoppel, regulatory takings, and equal protection, and correspondingly that
declaratory relief is unobtainable, we affirm.

## I. BACKGROUND AND FACTS

In 2019, defendant passed Marengo Ordinance 2019-5 to implement provisions of the
Medical Marihuana Facilities Licensing Act (MMFLA), MCL 333.2701 *et seq*.[1] The ordinance
provided, in relevant part, that defendant would issue a maximum of 60 Class C marijuana
"Grower Permits" for the commercial cultivation of medical marijuana. Two months later,
defendant passed Marengo Ordinance 2019-6 to implement provisions of the Michigan Regulation
and Taxation of Marihuana Act (MRTMA), MCL 333.27951 *et seq*. The ordinance provided, in

---

[1] "Although the [ordinance] provisions at issue refer to 'marihuana[,]' . . . by convention this Court
uses the more common spelling 'marijuana' in its opinions." *People v Carruthers*, 301 Mich App
590, 593 n 1; 837 NW2d 16 (2013).

relevant part, that defendant would issue a maximum of 60 Class C marijuana "Grower Permits" for the cultivation of recreational marijuana. Thereafter, defendant passed an ordinance that permitted the cultivation of marijuana within a "Marihuana Overlay District" that the parties call the "Green Zone." Plaintiff owned land within the Green Zone on which he operated a banquet hall.

In October 2020, defendant amended Marengo Ordinances 2019-5 and 2019-6, changing the number of Class C marijuana grower permits from 60 permits to "unlimited." In his complaint, plaintiff alleged that, in reliance on this amendment, he spent more than $300,000 to convert his property into a "Cannabis Grow Park," with the singular goal of marketing and selling the property to marijuana grow operators. According to plaintiff, he sold three parcels of his property to grow operators at an average price per acre of $27,215.

However, in September 2021, defendant again amended Marengo Ordinances 2019-5 and 2019-6 and changed the number of Class C marijuana grower permits it would issue from "unlimited" to 90.[2] According to plaintiff, by that time, defendant had already issued between 45 and 50 Class C grower permits. Plaintiff alleged that the cap on the number of grower permits rendered his property "near[ly] worthless" and that, after the cap was in place, plaintiff received no offers to buy his land. According to plaintiff, interest in his property waned because marijuana growers prefer to buy land in municipalities without grower permit caps.

In November 2022, plaintiff filed a complaint against defendant and asserted claims for equitable and promissory estoppel; violation of the Takings Clauses of the United States and Michigan Constitutions, US Const, Am V; Const 1963, art 10, § 2; violation of the Equal Protection Clauses of the United States and Michigan Constitutions, US Const, Am XIV; Const 1963, art 1, § 2; injunctive relief; and declaratory relief. In lieu of an answer to plaintiff's complaint, defendant moved for summary disposition and asked the trial court to dismiss plaintiff's claims under MCR 2.116(C)(7) (immunity granted by law) and (C)(8) (failure to state a claim on which relief can be granted).

Following oral argument, the trial court ruled in favor of defendant and issued an order dismissing the case on August 24, 2023. This appeal followed.

## II. STANDARDS OF REVIEW

We review de novo a trial court's decision regarding a motion for summary disposition. *Jostock v Mayfield Twp*, 513 Mich 360, 368; 15 NW3d 552 (2024). We also review de novo the interpretation of ordinances. *Soupal v Shady View*, 469 Mich 458, 462; 672 NW2d 171 (2003).

A court may grant summary disposition under MCR 2.116(C)(8) if the opposing party has failed to state a claim on which relief can be granted. A motion brought under subrule (C)(8) tests the legal sufficiency of the complaint solely on the basis

---

[2] It is unclear whether plaintiff challenges only the cap on medical marijuana licenses, or also challenges the cap on recreational licenses. We assume for purposes of this opinion that plaintiff contests both, and our conclusion would not change if plaintiff merely contested the former.

of the pleadings. All well-pleaded factual allegations are accepted as true and construed in a light most favorable to the nonmoving party. Summary disposition on the basis of subrule (C)(8) should be granted only when the claim is so clearly unenforceable as a matter of law that no factual development could possibly justify a right of recovery. [*Nyman v Thomson Reuters Holdings, Inc*, 329 Mich App 539, 543; 942 NW2d 696 (2019) (cleaned up).]

## III. ANALYSIS

## A. PROMISSORY ESTOPPEL

Plaintiff contends that the trial court erred by granting summary disposition to defendant on his claim for promissory estoppel. We disagree.

> To successfully assert a claim for promissory estoppel, a plaintiff must establish the following elements: "(1) a promise, (2) that the promisor should reasonably have expected to induce action of a definite and substantial character on the part of the promisee, and (3) that in fact produced reliance or forbearance of that nature in circumstances such that the promise must be enforced if injustice is to be avoided." [*Bodnar v St John Providence, Inc*, 327 Mich App 203, 226-227; 933 NW2d 363 (2019), quoting *Novak v Nationwide Mut Ins Co*, 235 Mich App 675, 686-687; 599 NW2d 546 (1999).]

"A promise giving rise to an actionable claim must be 'clear and definite,' while statements that are 'indefinite, equivocal, or not specifically demonstrative of an intention respecting future conduct, cannot serve as the foundation for an actionable reliance.' " *Bodnar*, 327 Mich App at 227, quoting *State Bank of Standish v Curry*, 442 Mich 76, 85-86; 500 NW2d 104 (1993).

The trial court was correct to grant summary disposition to defendant on plaintiff's promissory estoppel claim under MCR 2.116(C)(8) because plaintiff's complaint did not establish the "promise" element of promissory estoppel. Noticeably absent from plaintiff's complaint is any assertion that defendant made a promise to plaintiff. Plaintiff argues that, for purposes of his promissory estoppel claim, defendant's "promise" was its amendment to the ordinances that uncapped the number of Class C grower licenses, which plaintiff allegedly relied on by shutting down his banquet hall and developing his property for marijuana cultivation. We are not persuaded.

Plaintiff's position ignores a "well-established presumption" that " 'a law is not intended to create private contractual or vested rights but merely declares a policy to be pursued until the legislature shall ordain otherwise.' " *Nat'l R Passenger Corp v Atchison Topeka & Santa Fe R Co*, 470 US 451, 466; 105 S Ct 1441; 84 L Ed 2d 432 (1985), quoting *Dodge v Board of Ed*, 302 US 74, 79; 58 S Ct 98, 100; 82 L Ed 57 (1937). "[A] claim of promissory estoppel is akin to a contract claim." *Long v Chelsea Cmty Hosp*, 219 Mich App 578, 588; 557 NW2d 157 (1996). Consequently, just as courts have been reluctant to interpret legislation as creating contractual rights, we are reluctant to interpret legislation as a promise that the regulatory landscape established by it will continue.

As discussed, the "promise" on which plaintiff claims he relied was the uncapping of the number of Class C grower permits in defendant's amendments to Marengo Ordinances 2019-5, § 3.2(c) and 2019-6, § 3.2(c). The township board meeting minutes reflect the amendments as follows: "Motion made . . . to approve making Marihuana Grower Permits, Class C, from 60 to unlimited. This is Section 3.2.c. of Ordinance 2019-5 and Ordinance 2019-6. . . . Motion passed." But this statement was not directed to plaintiff, and it did not contain terms evidencing a promise such as "contract," "vested right," or "covenant." Nothing in the language suggests that defendant intended to promise anything to anyone.

In fact, the opposite is true, as Marengo Ordinances 2019-5 and 2019-6 both provided under § 3.2(h) that defendant's board could review and amend the number of permits "annually or as it determines to be advisable." This language unmistakably demonstrates that defendant's amendment to the number of Class C grower permits was not a promise to plaintiff that the number of permits would remain indefinitely "unlimited."

Because the statement on which plaintiff relies to establish promissory estoppel is not an unequivocal, clear assertion of defendant's intent to be bound to issue an unlimited number of Class C grower permits, it was not a promise to plaintiff to do so. See *State Bank*, 442 Mich at 85-86. Therefore, the trial court correctly granted summary disposition to defendant under MCR 2.116(C)(8) because plaintiff failed to state a viable claim of promissory estoppel.[3]

## B. REGULATORY TAKING

Plaintiff argues that the trial court erred by granting summary disposition to defendant on his regulatory taking claim. Again, we disagree.

Under the United States Constitution, private property shall not be taken "for public use, without just compensation." US Const, Am V. "The Takings Clause of the Fifth Amendment [is] applicable to the States through the Fourteenth Amendment . . . ." *Cedar Point Nursery v Hassid*, 594 US 139, 147; 141 S Ct 2063; 210 L Ed 2d 369 (2021). The Michigan Constitution similarly provides that "[p]rivate property shall not be taken for public use without just compensation therefore being first made or secured in a manner prescribed by law." Const 1963, art 10, § 2.

"When the government physically acquires private property for a public use, the Takings Clause imposes a clear and categorical obligation to provide the owner with just compensation." *Gym 24/7 Fitness, LLC v State*, 341 Mich App 238, 259; 989 NW2d 844 (2022), quoting *Cedar Point*, 594 US at 147. Here, plaintiff did not allege a physical taking of his property, but that defendant took his property without just compensation by rendering the value of his property "near worthless" when it passed the September 2021 amendments to Marengo Ordinances 2019-5 and 2019-6, changing the number of Class C grower permits from "unlimited" to 90 permits. Plaintiff's claim thus implicates a different strand of takings jurisprudence, the "regulatory taking." A regulatory taking can occur when government regulations overburden a property or deprive an

---

[3] Because we hold that the trial court correctly dismissed plaintiff's promissory estoppel claim under MCR 2.116(C)(8), we need not decide whether the trial court correctly dismissed the claim under MCR 2.116(C)(7).

owner of an economically viable use of their land. *Gym 24/7*, 341 Mich App at 261. A government regulation will be recognized as a taking when it (a) restricts an owner's ability to use his property and (b) the regulation "goes too far." *Cedar Point*, 594 US at 148-149.

Regulatory takings are further divided into two types—"categorical" and "noncategorical" takings. See *Gym 24/7*, 341 Mich App at 261. "[A] 'categorical' taking occurs when a regulation deprives an owner of *all* economically productive or beneficial use of property." *Id.* (emphasis in original); see, e.g., *Lucas v South Carolina Coastal Council*, 505 US 1003; 112 S Ct 2886; 120 L Ed 2d 798 (1992). In those situations, as with a physical taking, a property owner is automatically entitled to compensation. *Dorman v Twp of Clinton*, 269 Mich App 638, 646; 714 NW2d 350 (2006); *Merkur Steel Supply Inc v Detroit*, 261 Mich App 116, 130-131; 680 NW2d 485 (2004). "Regulatory taking claims that do not rise to the level of a categorical taking are governed by the standard set out in [*Penn Central Transp Co v New York City*, 438 US 104; 98 S Ct 2646; 57 L Ed 2d 631 (1978)]." *Gym 24/7*, 341 Mich App at 260-261 (quotation marks omitted). Courts applying the *Penn Central* test determine whether an unconstitutional taking has occurred by balancing "factors such as the economic impact of the regulation, its interference with reasonable investment-backed expectations, and the character of the government action." *Cedar Point*, 594 US at 148, citing *Penn Central*, 438 US at 124.

The preliminary question in any uncompensated takings claim is whether the plaintiff has established a vested property right. *Upper Peninsula Power Co v Village of L'Anse*, 334 Mich App 581, 604-605; 965 NW2d 658 (2020). To constitute a vested right, the interest must be "something more than such a mere expectation as may be based upon an anticipated continuance of the present general laws; it must have become a title, legal or equitable, to the present or future enjoyment of property . . . ." *In re Certified Question*, 447 Mich 765, 788; 527 NW2d 468 (1994), quoting 2 Cooley, Constitutional Limitations (8th ed), p 749 (quotation marks and citation omitted; alteration in original). Here, plaintiff asserts ownership of land which has substantially diminished in value because of defendant's ordinance amendments.

Assuming, without deciding, that plaintiff established a vested property right, we now turn to the question of whether plaintiff can state a claim for either a categorical or noncategorical regulatory taking. To the extent that plaintiff argues that he has been deprived of *all* beneficial use of his property, referred to in the caselaw as a "categorical taking," see *Gym 24/7 Fitness*, 341 Mich App at 261, that argument is belied by the pleadings. Plaintiff attaches two affidavits from licensed real estate professionals who assert that, assuming the parcels could be marketed as light industrial commercial property, they could be sold at $5,000 per acre or less. Therefore, the complaint supports that the land was not rendered completely valueless. Further, nothing in plaintiff's complaint suggests that the ordinance prevented him from using or selling his land for any other profitable purpose. Accordingly, there is no categorical taking.

We also conclude that, on the facts alleged, plaintiff cannot establish a noncategorical taking under the three-part *Penn Central* analysis. First, we review the economic impact of the ordinance amendments. "A reduction in the value of the regulated property is insufficient, standing alone, to establish a compensable regulatory taking." *K & K Constr, Inc v Dep't of Environmental Quality*, 267 Mich App 523, 559; 705 NW2d 365 (2005), citing *Penn Central*, 438 US at 131. Diminutions in value as great as 75 percent and 87.5 percent have been held not to be regulatory takings. *K & K Constr*, 267 Mich App at 553-554; see also *Lucas*, 505 US at 1019 n 8

(suggesting that even a 95 percent decrease could be noncompensable). In the present case, plaintiff alleges that the value of his property was significantly reduced by the regulation. Specifically, plaintiff alleges that he expected to be able to sell the rest of his land to marijuana growers at a comparable price to those parcels sold before defendant instituted the ordinance cap. He alleges that this expectation was eradicated when defendant capped the Class C grower permits because of an idiosyncratic preference of marijuana real estate buyers not to invest in municipalities with grower permit caps. Because we take as true plaintiff's allegation that the value of his property was significantly lowered by the regulation, this factor weighs in his favor. But, as stated, the first factor is not dispositive on its own.

Second, we consider plaintiff's reasonable investment-backed expectations. Here, plaintiff's alleged expectation that available permits would remain unlimited was plainly unreasonable. As previously discussed, there is no indication that defendant promised plaintiff or anyone else that the permits would remain uncapped. Instead, at all relevant times, the ordinances in question contained language indicating that defendant's board maintained discretion to adjust the number of permits "annually or as it determines to be advisable." Marengo Ordinance 2019-5, § 3.2(h); Marengo Ordinance 2019-6, § 3.2(h). Therefore, plaintiff's expectation was not reasonable given that the text of the ordinances clearly provided that defendant's board could cap the number of Class C grower permits at any time. Additionally, defendant initially capped the number of permits at 60 before uncapping them roughly a year later in October 2020, and capped them again at 90 in September 2021. Thus, plaintiff enjoyed a boost in the value of his property for less than a year before defendant reimposed a restriction on available permits, providing plaintiff only a brief window of time in which it was even possible to form any reliance interests, reasonable or otherwise. The investment-backed expectations factor weighs strongly against a finding that a taking has occurred.

Finally, we assess the character of the government action, including whether it "singles [a plaintiff] out to bear the burden for the public good and whether the regulatory act being challenged here is a comprehensive, broadly based regulatory scheme that burdens and benefits all citizens relatively equally." *K & K Constr*, 267 Mich App at 559. Here, the ordinances in question do not single out plaintiff; all property owners in Marengo Township are subject to the ordinances, which comprehensively regulate marijuana cultivation by allowing the issuance of a maximum of 90 Class C grower permits each for the cultivation of recreational and medical marijuana. In fact, there is nothing about the ordinance that directly prohibits plaintiff's land from being used for growing marijuana; there is simply a township-wide limit on how many Class C grower permits will be issued overall, which incidentally diminishes the value of land that could be used for cultivation by a permit holder. Therefore, this factor, too, weighs against plaintiff.

Overall, accepting plaintiff's factual allegations as true and applying them to the *Penn Central* balancing test, we conclude as a matter of law that no compensable taking of plaintiff's property occurred. We also conclude that no factual development could change this outcome, rendering summary disposition on this issue appropriate under MCR 2.116(C)(8).

In sum, because plaintiff failed to plead facts demonstrating either a categorical taking of his land such that his property was rendered wholly unusable, or a noncategorical taking under the *Penn Central* inquiry, the trial court correctly granted summary disposition on plaintiff's takings claim.

## C. EQUAL PROTECTION VIOLATION

We also hold that the trial court did not err by granting summary disposition to defendant on plaintiff's equal protection claim.

Plaintiff based his equal protection claim on his allegation that defendant told two businesses, Amsterdam and Alpine, that they will be "grandfathered" under the version of the ordinance that allowed an unlimited number of Class C grower permits, notwithstanding the caps imposed in the amendments that defendant made to the ordinances in 2021. Equal protection of the law is guaranteed by both the United States and Michigan constitutions. US Const, Am XIV; Const 1963, art 1, § 2; *Shepherd Montessori Ctr Milan v Ann Arbor Charter Twp*, 486 Mich 311, 318; 783 NW2d 695 (2010). The guarantee secures every person against intentional and arbitrary discrimination by the law or the improper execution of the law by assuring that similarly situated persons are treated similarly. *Village of Willowbrook v Olech*, 528 US 562, 564; 120 S Ct 1073; 145 L Ed 2d 1060 (2000).

Equal protection claims like plaintiff's are sometimes referred to as a "class of one" because they assert that a single plaintiff is treated differently from others similarly situated. See, e.g., *id.* A plaintiff bringing a "class of one theory" bears a "heavy burden." *Loesel v Frankenmuth*, 692 F3d 452, 462 (CA 6, 2012). To state a valid equal protection claim, a plaintiff must both identify a similarly situated person or entity who was treated differently and identify a clear standard applied to distinguish a decision from a discretionary determination on the basis of subjective or individualized assessments. *Engquist v Oregon Dep't of Agriculture*, 553 US 591, 603; 128 S Ct 2146; 170 L Ed 2d 975 (2008).

Here, the trial court was correct to dismiss plaintiff's equal protection claim because plaintiff did not identify a similarly situated property owner whom defendant treated differently under the ordinance. Although plaintiff labeled Amsterdam and Alpine as similarly situated in his complaint, plaintiff plainly stated in the trial court and on appeal that Amsterdam and Alpine are marijuana grow operators. In contrast, plaintiff asserted in his complaint that he developed his property "for the sole purpose of marketing and selling the [property] to prospective Cannabis Grow operators." Therefore, Amsterdam and Alpine are similarly situated to plaintiff's prospective customers—businesses that cultivate marijuana plants—rather than plaintiff—a seller of land.

Plaintiff's allegation that defendant told Amsterdam and Alpine that it would issue additional Class C grower permits to them has no bearing on plaintiff's position as a seller of land, because he does not grow marijuana and he did not assert that he applied for any Class C grower permits that defendant denied. Defendant merely wants the *availability* of unlimited grower permits within the township because, he alleges, marijuana real estate buyers prefer communities with unlimited grower permits. In other words, plaintiff has not asserted that Amsterdam or Alpine actually received from defendant what he wanted—unlimited grower permits running with the land that allowed them to sell parcels at a higher profit per acre. The trial court correctly dismissed plaintiff's claim because the parties are not similarly situated.

## D. DECLARATORY RELIEF

Plaintiff argues that the trial court erred by dismissing his claim for declaratory relief because he pleaded viable claims against defendant. But we are affirming the dismissal of plaintiff's underlying claims, and so we likewise affirm dismissal of his claim for declaratory relief.

Plaintiff cites MCR 2.605(A)(1), which addresses a court's power to enter a declaratory judgment:

> In a case of actual controversy within its jurisdiction, a Michigan court of record may declare the rights and other legal relations of an interested party seeking a declaratory judgment, whether or not other relief is or could be sought or granted.

We do not dispute that plaintiff presented an actual controversy. However, because, as discussed, the trial court correctly resolved plaintiff's claims grounded in promissory estoppel, regulatory takings, and equal protection in defendant's favor, and because plaintiff cites no other basis for the need to declare or clarify controverted interests, the trial court did not err when it declined to grant relief on this claim.[4]

Affirmed.

/s/ Colleen A. O'Brien
/s/ Michael J. Kelly
/s/ Daniel S. Korobkin

---

[4] Plaintiff also argues in the alternative that the trial court erred by not providing him an opportunity to amend his complaint. Plaintiff has abandoned this issue because he fails to offer any reasoning about how an amendment of any one of his claims would transform it into a claim on which relief could be granted or why the amendment would otherwise not be futile. Nor did plaintiff file a motion to amend his complaint in the proceedings below or explain in what way he sought to amend the complaint. A party abandons an issue by merely announcing it, giving it cursory treatment, and failing to properly address the merits of a claim of error. *In re Conservatorship of Brody*, 321 Mich App 332, 346-347; 909 NW2d 849 (2017). We therefore decline to address this issue.